# JONAS U. GROVE

*v.*

# JONATHAN R. MILES.

| 85 | 85 |
| 87a | 390 |

| 85 | 25 |
| 111a | 643 |

1. CONTRACT—*compensation for labor, etc., on mill.* Where a party, who has employed another to erect and complete a mill and put in the necessary machinery for one-half interest therein, interferes with the work, and takes control of and directs· it, he will have no right to make extravagant and wasteful expenditures as against the other party, and he will have no right to change the plans so as to increase the cost which he seeks to recover.

2. TENANT IN COMMON—*when chargeable with rents.* Where a party having the legal title agrees with another to convey him one-half of the title in consideration of his completing a mill upon the property, and afterwards takes charge of the work and completes the same, if he rents the mill, or could have done so, and refused or neglected when good, responsible tenants could have been had, he will be required to account to the other party for half of a fair rent.

APPEAL from the Circuit Court of Macoupin county; the Hon. CHARLES S. ZANE, Judge, presiding.

This was a bill in chancery, by Jonathan R. Miles, against Jonas U. Grove. The bill, in substance, alleges that complainant was the owner of three acres of ground, upon which he had erected a mill house, and, being desirous of completing the same with the necessary machinery, made a contract with the defendant, whereby the latter was to furnish all the materials and labor to complete said mill, and put the same in good running order, with three run of stones, for the manufacture of flour, and the complainant, on completion of the work, was to convey to the defendant one-half of the title.

The defendant employed one Brooks to do the work and furnish the material, and advanced to complainant $7400, in Macoupin county bonds, with which to make payments. For some reason, Miles took charge of the work before Brooks had completed his contract, and finished the mill at a cost of $12,000. Brooks had agreed to complete the mill for $7400.

The bill prayed for an account of the sum due the complain-

ant for advances, and a decree for its payment, and, in default of payment, an order for the sale of the defendant's interest in the property.

Mr. JOHN I. RINAKER, and Mr. WM. R. WELCH, for the appellant.

Messrs. JOHN M. & JOHN MAYO PALMER, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This case has been twice before us, and is first reported in 58 Ill. 338, and next in 71 Ill. 376. The material facts of the case will be found stated as there reported. When last before us, the decree was reversed because there was no evidence of the value of the work and material for which the charges were made in appellee's account. There were examined three witnesses, who have experience as mill-wrights, who testify that they have examined the charges, and find them reasonable, and that they find nothing charged which is not necessary and proper for such a mill. On the other hand, a witness was introduced by appellant, who was a mill-wright, who testified that $7400 was all that the labor and machinery put in the mill were worth, including what Brooks had done, as well as that by appellee. Brooks, who was employed by appellant to furnish the material, machinery and labor, testified that he could and would have completed the work at $7400, the price at which he contracted to complete it, if appellee had not interfered and taken charge of the work. He and others say that appellee had put in machinery for four run of stones, and the contract was for machinery for but three run, which added to the expense.

Young testified that he had made a thorough measurement and estimate, and that it should not have cost more than $8558.65. He was a mill-wright of experience. Webster, who had followed the business since 1846, states that he examined the mill as it was completed, and that it could have been done for $8558.62. Fisher, who worked on the mill, testified

that the work could have been done on the mill for $1500. Fisher testifies that he superintended the building of a mill at Atlanta, in 1868, which contained more machinery than the one in controversy, and the contractor completed it for $7000; that the character of the work in both mills is about alike. The Atlanta mill was four and this mill three stories high, which would make it more expensive to place the machinery in the former than in the latter. This witness also says the labor of putting in the machinery could have been done for $1200, and he would have done it for $1500 at the time, and would have furnished the necessary machinery, lumber and labor for running three sets of stones for $7500, and it could have been done at $7000, and he would have liked the job at the former of these estimates.

After considering this evidence, we are clearly of opinion the master and the court below allowed appellee too large a sum, even if he was entitled to anything. Under the evidence in the record, we think it preponderates in favor of not more than $8558, if even that much. Appellee, from the evidence, seems to have interfered with the work, and to have taken control and directed it, and that, as he was not a mill-wright, may have increased the cost; and if he so acted, he is not, to say the least, entitled to large or extra prices for what he did. He had no right, even if the parties had put him in charge, to have made extravagant or wasteful expenditures of appellant's money; and we fail to see how he can be allowed, on the evidence as it appears in the record, $12,000, including what Brooks did, on the contract. Appellee's witnesses, introduced as to the prices or values of the articles furnished and labor performed, do not seem to have testified with much particularity or very definitely—certainly not enough so to overcome appellant's evidence. Appellee only had the right to finish the mill in manner agreed upon in Brooks' contract. He had no right to change it to a four-run of stones, if he thereby increased the expense, and if he so increased the cost, or did so otherwise, it must be at his own expense. He had no power to change the plans, and thus increase the cost and

require appellant to pay the increased expense. If appellee did so increase the cost, such increase should not be allowed to him in stating the account.

One of the grounds of the last reversal of this case was. because it did not appear, from the evidence, that appellant had received a credit for a sufficient amount of rent of the mill. There is a statement in the abstract, purporting to be an extract from appellee's evidence, that what he meant by stating he had exclusive possession of the mill as against appellant, was, that he had not made him a deed for the mill. and that "appellee never occupied it but two months; the mill stood idle." Appellee contends this means that the mill was idle all the time but two months, but appellant does not concede that this is its meaning. We have searched the additional record in vain to find any such evidence. If appellee rented the mill, or could have done so, and refused or neglected, when good and responsible tenants could have been had, he should account for half of a fair rent to appellee.

The decree, for the reasons given, must be reversed and the cause remanded.

*Decree reversed.*