MARIA ANNA LEHNDORF *et al.*

*v.*

ALLEN COPE.

*Filed at Mt. Vernon September 28, 1887.*

1. COVENANTS FOR TITLE—*limited to the estate actually conveyed.* The estate granted by a deed is neither enlarged nor restricted by the covenants for title therein contained or implied. Such covenants are but an assurance of the title granted, no matter to whom the grant is made. If the grantee takes but a life estate, the covenants assure that estate; and if he takes an estate in fee tail, the covenantor warrants to him but a life estate, and the remainder in fee to the one who will take upon the termination of the life estate.

2. CONSTRUCTION OF CONTRACTS—*its object and purpose.* The legitimate purpose of all construction of instruments in writing is to ascertain the intention of the party or parties making the same; and when this is determined, effect will be given thereto accordingly, unless to do so will violate some established rule of property.

3. SAME—*giving effect to every part of the instrument.* As it can not be presumed that words or terms in a conveyance were used without a meaning, or having some effect given to them, therefore, if it can be done consistently with the rules of law, that construction will be adopted which will give effect to the instrument and to each word and term employed, rejecting none as meaningless or repugnant.

4. SAME—*determining the nature and quantity of estate granted by deed.* The nature and quantity of the interest or estate granted by a deed are to be ascertained from the deed itself, and are to be determined by the courts, as a matter of law. While the intention of the parties will control in the construction of the deed, it is the intention, apparent and manifest in the instrument, construing each clause, word and term involved in the construction according to its legal import, and giving to each thus construed its legal effect.

5. ESTATES IN LAND—*estate less than a fee—express words of limitation not essential.* In order to create an estate less than a fee, it is not necessary there shall be express words of limitation, either under the statute, (section 13 of the Conveyance act,) or at common law. It is sufficient for that purpose if it appear, by necessary implication, that a less estate is intended to be granted.

6. SAME—*estate tail, as at the common law, becomes a life estate under the statute.* Under our statute, (section 6 of the Conveyance act,) in all cases where, by the common law, any person might have become seized in fee tail of any lands, such person, instead of becoming seized thereof in fee tail, will take an estate for his life only, and the remainder will pass in fee simple to the person or persons to whom the estate tail would, on the death of the first grantee or donee, have passed at common law.

7. SAME—*life estate, with remainder over—a deed construed.* A deed of a tract of land to A, a married woman, "and her heirs by her present husband, B," conveyed to her what would have been an estate tail by the common law, but under our statute an estate for her life, only, with remainder in fee to her heirs by B, or those to whom the estate was immediately limited. It was *held*, the words, "to her heirs by her present husband, B," meant, to the issue of her body by her then present husband begotten.

8. In such case, if no issue of the body of the immediate grantee had been living at the date of the deed, or of its delivery, she would have taken only a life estate, and the remainder would have been what is known as "a contingent remainder;" but there being two of such children *in esse*, the remainder vested immediately in them in fee, subject to the possibility

of being divested *pro tanto,* if the grant should be opened to let in after-born children of the same description.

9. SAME—*mortgage by grantee for purchase money—as embracing a less estate than that conveyed.* The owner of land conveyed the same to a married woman, "and her heirs by her present husband," she having at the time two such heirs, and she and her husband at the same time executed to the grantor a mortgage of the premises to secure a part of the purchase money not paid, evidenced by the wife's notes, and the mortgagee sold and assigned the same: *Held,* on bill by the assignee to foreclose, that the mortgage was limited to the life estate of the wife, and created no incumbrance on the remainder which vested in the heirs.

10. While it is true that a deed for land, and a mortgage of the same date taken for the purchase money, are but parts of a single transaction, nevertheless, one estate may be conveyed by the deed and a wholly different interest by the mortgage. If the vendor sees fit to take security by mortgage upon less than the whole land sold, or upon less than the estate conveyed, the contract will be valid, and the residue of the land or estate will pass by the deed, unincumbered by any lien in his favor.

11. VENDOR'S LIEN—*its nature—waiver by taking other security.* A vendor's lien is the creation of courts of equity, based upon the equitable consideration that when the vendor has taken no security and done no act showing an intention to waive the lien, the presumption in such case is, that it is not the intention of the parties that one should part with and the other acquire the title without payment of the purchase price. The lien exists independent of any contract, is personal to the vendor, and whenever it appears that the vendor did not rely upon the lien at the time of the sale, or has subsequently abandoned it as security, it will be held to be waived.

12. Where a vendor conveys to another a life estate only, with remainder to the heirs of the grantee in fee, and takes back a mortgage from the holder of the life estate to secure the payment of the unpaid price, the grantor will have no vendor's lien upon the premises sold for the purchase money.

13. SAME—*not assignable.* The lien created by implication in favor of a vendor, is personal as to him, and is not assignable or transferable, even by express contract between the vendor and an assignee. It can be enforced only by the vendor himself.

WRIT OF ERROR to the Circuit Court of Marion county; the Hon. AMOS WATTS, Judge, presiding.

James W. Humphrey, being the owner of the lands in controversy, bargained with Maria Anna Lehndorf for the sale thereof, for $5100, and, joined by his wife, on the 3d day of August, 1883, by statutory form of warranty deed, in consid-

eration of that sum, did "convey and warrant to Maria Anna Lehndorf, and her heirs by her present husband, Henry Lehndorf," said lands. Two thousand dollars of the purchase money was paid in hand, and two notes of Maria Anna Lehndorf were given, for $1550 each, payable, with interest, to said Humphrey, in twelve and twenty-four months, respectively. At the same time, and as part of the same transaction, a mortgage in statutory form was duly executed and delivered by said Maria Anna Lehndorf, and Henry Lehndorf, her husband, upon the same lands, to secure the said two notes,—all being done simultaneously, and as parts of the same transaction. James W. Humphrey afterwards sold, indorsed and delivered the said notes to Allen Cope, defendant in error.

On the 26th day of December, 1885, said Maria A., joining with her two sons, Paul and Albert Lehndorf, executed and delivered a deed conveying to Elizabeth Wirtz said lands. The first deed and mortgage mentioned were duly recorded August 8, 1883, the latter, December 26, 1885. The notes remaining unpaid after due, Cope, assignee thereof, filed this bill to foreclose the said mortgage, making Maria A. Lehndorf, Henry Lehndorf, her husband, Paul, Albert and William Lehndorf, (children of Maria and Henry,) and Elizabeth Wirtz, defendants.

The bill, after alleging the sale of the land by Humphrey to Mrs. Lehndorf, and making the deed, mortgage and notes exhibits, sets up the foregoing facts, and then proceeds, at the request of said Maria A. Lehndorf, the said James W. Humphrey, and his wife, Sarah F. C. Humphrey, conveyed and warranted said lands and real estate to her, by the name and style of Maria Anna Lehndorf, and her heirs by her present husband, Henry, Lehndorf, by a deed of conveyance, bearing date the said 3d day of August, 1883, duly recorded the 8th of August, 1883.

"Complainant submits that said Maria Anna Lehndorf can have no heirs while living, and that the words, 'and her heirs

by her present husband, Henry Lehndorf,' are surplusage in said deed, and that said Paul, Albert and William Lehndorf take no interest, either in law or equity, in said lands and real estate by virtue of the same being incorporated, as aforesaid, in said deed of conveyance. And complainant further shows that said Paul, Albert and William Lehndorf paid nothing of the purchase money of said lands and real estate to said James W. Humphrey, and of any interest of said lands, by virtue of said words or otherwise. Such interest would be subject to the payment of the purchase money of said lands and real estate, and subject to the rights and equities of your complainant to have said lands and real estate subjected to the payment of said purchase money so secured by said notes and mortgage, as aforesaid. Complainant further shows, that on, to-wit, the 26th day of December, 1885, Maria Anna Lehndorf, Paul and Albert Lehndorf, executed, acknowledged and delivered to one Elizabeth Wirtz, of St. Louis, Missouri, a warranty deed of conveyance, purporting to convey and warrant said lands to said Elizabeth Wirtz, which said deed was duly recorded in said Marion county, in record book 41, page 55. Complainant charges, on information and belief, that said conveyance so made by Maria Anna, Paul and Albert Lehndorf, to said Elizabeth Wirtz, was without any consideration; that said Elizabeth Wirtz is the mother of said Maria Anna Lehndorf, and that she paid nothing for said lands and real estate to said Maria Anna, nor to said Paul or Albert Lehndorf, but said conveyance was made to embarrass in the collection of said notes. Complainant submits that if said conveyance of said lands and real estate to said Elizabeth Wirtz was in good faith, the rights of said Elizabeth Wirtz acquired by such conveyance would be subject to the rights and equities of complainant in and to said lands and real estate."

The bill prays for appointment of a guardian *ad litem* for Paul, Albert and William Lehndorf, who are alleged to be minors; that an account be taken of the amount due com-

plainant on the mortgage; that in default of payment, suffi-
cient of the land be sold to pay the amount found due; that
the rights and equities of the defendants be decreed subject
to the equities of complainant, and that they be barred, etc.,
of the equity of redemption.

The defendant Maria A. Lehndorf answered, admitting the
making of the deeds and mortgage, and that the notes men-
tioned, and secured by the mortgage, were part of the purchase
money; admits that it was agreed between her and said Humph-
rey, that in making the conveyance of said land the deed should
be made to Maria Anna Lehndorf and her heirs by her present
husband; that said deed was so made for the purposes in the
deed expressed, and with the intent to so convey the land, and
not otherwise; denies that she agreed to purchase and take a
conveyance to herself, but that the deed was intended to con-
vey said lands to her and her heirs by her husband, Henry
Lehndorf, and not otherwise; avers that the deed conveyed
an estate for life to her in said lands, and the fee therein to
her heirs of said Henry, and that Humphrey well knew the
same before and at the time of the execution of said deed; ad-
mits making notes as alleged, and mortgage to secure the same,
but denies that it was upon any interest in the land not owned
by her; that said mortgage was intended to be only of her
life estate, and Humphrey well knew the same, and accepted
the same with such knowledge and intent; avers that if com-
plainant is owner of the notes, he held with notice that Maria
Anna had purchased and taken by said deed only a life estate
in said lands at and before he purchased said notes of said
Humphrey; that Humphrey had taken and accepted a mort-
gage on her life estate for the security of said notes with full
knowledge, and his assignee took no other or greater interest
or right than he possessed; denies the right of complainant to
other equitable relief; avers that Humphrey waived right to
lien in equity for the purchase money by taking security by
mortgage of life estate, and that upon the assignment of the

notes he received pay and satisfaction of the purchase money, and thereby any right of equitable relief for the purchase money he might have had was lost; avers that her children by said Henry became and were owners in fee of said lands as tenants in common, subject to the life estate in herself, and subject, also, to be opened to let in other child or children that may be born to the body of said Maria by her present husband, Henry Lehndorf, etc.

The defendants Paul, Albert and William Lehndorf, by their guardian *ad litem,* demurred to the bill, and the demurrer was overruled by the court, and defendant Wirtz was defaulted. Decree was rendered foreclosing the mortgage, finding the interest of all the defendants subject thereto, and decreeing accordingly.

The only evidence introduced, other than the deeds, notes and mortgage mentioned, was that of the scrivener who drew the deed and mortgage of August 3, 1883, who identified the notes as those given at the time for the purchase money of the land; and it was shown, also, that Paul, Albert and William Lehndorf were the children of said Maria by her husband, Henry Lehndorf; that all were minors; two of them were born prior to the 3d day of August, 1883, and one since. The defendants below prosecute this writ of error.

Mr. J. B. KAGY, and Messrs. CASEY & DWIGHT, for the plaintiffs in error:

The vendor's lien can not be invoked in this case. *Moshier* v. *Meek,* 80 Ill. 79.

The deed from Humphrey and wife to Maria Anna Lehndorf conveys a life estate only. Starr & Curtis' Stat. chap. 30, secs. 6, 14; 1 Washburn on Real Prop. chap. 4, secs. 30-33, 38-41; Coke on Littleton, 206; 2 Preston on Estates, 485; 2 Blackstone's Com. (Chitty's ed.) *114, 115; *Voris* v. *Sloan,* 68 Ill. 588; *Beacroft* v. *Strawn,* 67 id. 28; *Hosmer* v. *Carter,* 68 id. 98; *Blair* v. *Vanblarcum,* 71 id. 290; *Frazer* v. *Board*

*of Supervisors,* 74 id. 282; *Cooper* v. *Cooper,* 76 id. 57; *Baker* v. *Scott,* 62 id. 86.

The mortgage given by the said Maria Anna Lehndorf to Humphrey was upon her life estate only.

The conveyance to Elizabeth Wirtz by Maria A. Lehndorf should have been sustained.

Mr. HENRY C. GOODNOW, for the defendant in error:

Every estate granted, etc., shall be deemed a fee simple estate, unless limited by express words, or when such estate is not granted. Conveyance act, sec. 13.

There are no express words of limitation in this deed. The word "heirs" is a word of limitation and not of purchase, and as no person can have heirs while living, the words, "and her heirs by her present husband," are surplusage. 1 Hilliard on Real Prop. p. 351, sec. 19; *Cooper* v. *Cooper,* 76 Ill. 57; *Baker* v. *Scott,* 62 id. 86.

There is no *habendum* clause in the deed defining the estate granted. It results, from the statute, by implication, an estate in fee passed. *Riggin* v. *Love,* 72 Ill. 553.

The words, "heirs of his body," are words of limitation and not of purchase. *Brislain* v. *Wilson,* 63 Ill. 175; 2 Washburn on Real Prop. (2d ed.) 268, 269.

The words, "heirs by her present husband, Henry Lehndorf," mean no more than "heirs of the body," and the words, "heirs of the body," are held to be words of limitation and not of purchase. *Beacroft* v. *Strawn,* 67 Ill. 28; *Baker* v. *Scott,* 62 id. 87.

The words, "heirs by her present husband," mean a class of persons to take in succession, from generation to generation, by descent, and not by purchase. *Beacroft* v. *Strawn,* 67 Ill. 28.

There being no *habendum* clause in this deed to limit or define the extent or certainty of the estate granted, we can only look to the words of the deed for the extent and certainty of the estate granted.

The rules of construction require that all of the language of the grant shall be considered, and effect given to it, unless so repugnant or meaningless that it can not be done. *Cooper* v. *Cooper*, 76 Ill 60; *Brownfield* v. *Wilson*, 78 id. 467.

The mortgage and deed must be taken together to find what these parties intended to do. They understood the fee in the land was held to secure the purchase money.

The children take, if they take anything, as volunteers, and hence have no equities against Humphrey or his assignee, Cope.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

It is contended by defendant in error, that by the deed of August 3, 1883, from Humphrey and wife to "Maria Anna Lehndorf and her heirs by her present husband, Henry Lehndorf," Mrs. Lehndorf took a fee simple estate in the lands conveyed, while plaintiffs in error contend that she thereby took a life estate only, with remainder in fee to her children by said Henry Lehndorf.

The deed being statutory in form, contains no *habendum* limiting or defining the estate taken by Mrs. Lehndorf, and although the deed must be held equivalent to one containing full covenants, (*Elder* v. *Derby*, 98 Ill. 228,) it is manifest that the estate granted would not be enlarged or restricted thereby. Such covenants are an assurance of the title granted to the grantees, whomsoever they may be. If Mrs. Lehndorf took the fee, the covenants assure that estate to her; if she takes an estate in tail, the covenantor warrants to her a life estate, and the remainder in fee to whomever would take upon determination of her estate. Therefore, as said by counsel for defendant in error, the determination of the question depends upon a construction of the granting clause of the deed, which is, that the grantors, in consideration, etc., "convey and warrant to Maria Anna Lehndorf, and her heirs by her present husband, Henry Lehndorf, of," etc., the lands in controversy.

The legitimate purpose of all construction of a contract or other instrument in writing, is, to ascertain the intention of the party or parties in making the same, and when this is determined, effect will be given thereto, unless to do so would violate some established rule of property. The nature and quantity of the interest granted by a deed are always to be ascertained from the instrument itself, and are to be determined by the court as a matter of law. The intention of the parties will control the court in construction of the deed, but it is the intention apparent and manifest in the instrument, construing each clause, word and term involved in the construction according to its legal import, and giving to each thus construed its legal effect. Washburn on Real Prop. 404; *Bond* v. *Fay,* 12 Allen, 88; *Lippett* v. *Kelley,* 46 Vt. 516; *Price* v. *Sisson,* 13 N. J. Eq. 178; *Caldwell* v. *Fulton,* 31 Pa. St. 489; *Wager* v. *Wager,* 1 S. & R. 374.

It can not be presumed that the parties used words or terms in the conveyance without intending some meaning should be given them, or without an intent that the effect legitimately resulting from their use should follow; hence, if it can be done consistently with the rules of law, that construction will be adopted which will give effect to the instrument, and to each word and term employed, rejecting none as meaningless or repugnant.

We should, perhaps, first notice the contention of counsel for defendant in error, that by virtue of section 13 of the Conveyance act, (as there is here no express limitation upon the estate of Mrs. Lehndorf, and as no one can have heirs while living,) the words following the grant to her should be rejected, and the deed read as if to her only. This arises from a misapprehension of the statute. The evident purpose of the section referred to, was to change the rule of the common law, whereby, if a conveyance, etc., was made without words of inheritance, an estate for the life of the grantee only was created. The section is as follows:

"Sec. 13. Every estate in lands which shall be granted, conveyed or devised, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised, by construction or operation of law."

It is not necessary, as seems to be supposed, that to create a less estate than the fee, there should be express words of limitation, either under the statute or at common law. It is sufficient for that purpose if it appear, by necessary implication, that a less estate was granted. In an early case, (*Frogmorton* v. *Wharrey*, 2 W. Black. 728,) where there was a surrender of copyholds by R., who was seized in fee, to M., his then intended wife, and the heirs of their two bodies, etc., WILMOT, C. J., delivering the opinion of the court for himself, BATHURST, GOULD and BLACKSTONE, JJ., after holding, on authority of *Gossage* v. *Taylor*, Styles, 325, and *Lane* v. *Pannel*, 1 Roll. 438, that the children thus begotten took as purchasers and not as heirs, says, the only difference in the cases is, that in those cases "the wife had an express estate for life, and here not. But upon legal principles the cases are just alike. An estate 'to A, and the heirs of his body,' is the same as an estate 'to A for life, remainder to the heirs of his body.'" By operation of law, the added words created, in the case cited, in M. a life estate only, with remainder to the heirs of herself and R., as purchasers. So the grant "to A, and the heirs of his body," by operation of law creates an estate tail in A, remainder in tail. And this has been the uniform holding.

The sixth section of the Conveyance act provides, that in cases where, by the common law, any person or persons might, after its passage, become seized in fee tail of any lands, etc., by virtue of any gift, devise, grant or conveyance "hereafter to be made," or by any other means whatsoever, such person or persons, instead of being or becoming seized thereof in fee

tail, shall be deemed and adjudged to be and become seized thereof for his natural life only, and the remainder shall pass, in fee simple absolute, to the person or persons to whom the estate tail would, on the death of the first grantee or donee, pass, according to the course of the common law, by virtue of such gift, devise or conveyance. It is apparent, if at common law, by virtue of this conveyance, Mrs. Lehndorf would take an estate tail, whether an estate tail general, or an estate tail special, the thirteenth section would be inoperative, and by virtue of section 6 she would become seized of an estate for her life, with remainder in fee to those to whom the estate is immediately limited.

Estates tail came into general use upon construction by the courts, of the statute *de donis conditionalibus,* (13 Edw. 1, c. 1, sec. 1,) and while no extended discussion will be necessary, an examination sufficient to determine if this case falls within the rules creating an estate tail, will be proper.

To create an estate in fee simple, at common law, the grant must be to the grantee and his heirs, without limitation, to take from generation to generation, in the regular course of descent. A tenant in fee simple is defined by Blackstone to be, "he that hath lands, tenements or hereditaments, to hold to him and his heirs forever, generally, absolutely, simply; without mentioning *what* heirs, but referring that to his own pleasure or the disposition of the law." (Com. 11, 104.) Estates in fee tail were of two kinds: Estates tail general, as where the grant was to one and the heirs of his body generally, so that his issue in general, by each and all marriages, are capable of taking *per formam doni;* and estates tail special, where the gift or grant was restricted to certain heirs, or class of heirs, of the donee's body. (Blackstone's Com. 11, 113, 114; 4 Kent's Com. 11; 1 Washburn on Real Prop. *66.) In a grant of lands, words of inheritance were necessary, at common law, to the creation of a fee, but in the creation of a fee tail estate more was required. There must also be words of

procreation, indicating the body out of which the heirs were to issue, or by whom they were to be begotten. The ordinary formula was to make the gift or grant to the donee, as the grantee was called, "and the heirs of his body," or "her heirs upon her body to be begotten," or "upon her body to be begotten by A;" but there was no especial efficacy in these particular forms of words, and it was requisite, only, that in addition to limitation to "heirs," the description of the heirs should be such that it should appear they were to be the issue of a particular person. Blackstone's Com. 11, 114; 1 Washburn on Real Prop. *72; 2 Preston on Estates, 478, and cases cited; 2 Jarman on Wills, 325.

The necessary words of inheritance are not here wanting to create a fee simple, or fee tail, at common law. The grant is to Mrs. Lehndorf and her heirs, and if the description had stopped here, a fee simple estate would, at common law, have passed by the deed. The grant is not, however, to her and her heirs *simpliciter*, but to her and her heirs by a particular husband, and by necessary implication excludes the construction that heirs generally were intended. Heirs, generally, would include not only those designated, but children she may have or have had by any other husband, as well as collaterals. Who, under the law, could be her heirs by her present husband except her children by him begotten? If the word "begotten" had been introduced before the preposition "by," so as that it would have read, "her heirs begotten by her present husband," etc., it would have been no more certain that the issue of her body was intended. If it be conceded that equivalent words, which, by necessary implication, describe and designate the particular body out of which the heir should proceed, would suffice to create an estate tail at common law, which seems to be done by the cases and text-writers, then the conclusion seems irresistible that such an estate was here created. "Her heirs by her present husband," could be no other than the issue of her body by him begotten. No other person, or class

of persons, would answer the description, and they would and do fill it in every particular.

This precise point was ruled in *Wright* v. *Vernon*, 2 Drewry, 439, where it is said: "The effect, therefore, of a limitation 'to the right heirs of Sir Thomas Samwell, by a particular wife, forever,' is precisely the same as that of a limitation to the heirs of his body by that particular wife, forever. The words, 'of his body,' are not in the least degree necessary to this construction of the term 'heirs,' or 'right heirs,' because without their insertion the full and absolute effect of them is involved in the description, 'his right heirs, by Mary, his second wife,' which description limits the meaning of the term 'heirs' to heirs special, procreated by himself, as effectually and as necessarily as the words, 'of his body,' could do if they had been added." This was a case, it is true, arising upon a devise, in respect of which much greater latitude of construction is allowable than in the construction of deeds; but that consideration can in no way affect the weight of the authority upon the matter being considered.

It follows, that Mrs. Lehndorf would, at common law, be seized, by virtue of this conveyance, of an estate tail special in the lands conveyed, and therefore, under the statute, would take an estate for her life only, and that, by virtue of the statute cited, the remainder vested in fee in her children by her said husband, *in esse* at the time of making the deed, subject possibly, however, to be opened to let in after-born children of the same class. If no issue of her body "by her present husband" had been then living, the remainder would have fallen under Fearne's fourth and Blackstone's first definition of a contingent remainder, *i. e.*, when the remainder is limited "to a dubious and uncertain person." But here, at least two of the children who would, under the statute, take the fee simple estate upon the determination of the life estate, were in being when the deed was executed and delivered, and the remainder vested immediately in them in fee, subject to the

possible contingency of being divested *pro tanto*, if opened to let in after-born children answering the same description. The person to whom the remainder is limited is ascertained, the event upon which it is to take effect is certain to happen, and although it may be defeated by the death of such person before the determination of the particular estate, it is a vested remainder. "It is the uncertainty of the right of enjoyment which renders a remainder contingent,—not the uncertainty of its actual enjoyment." 2 Blacks. Com. 169 ; Fearne on Rem. 149 ; Kent's Com. 203 ; 2 Sandf. C. R. 533 ; *Hawley* v. *James,* 5 Paige, 467 ; *Moore* v. *Lyons,* 25 Wend. 144.

But it is said that the rule in *Shelley's case* should be applied ; but it will be seen that its application will produce the same result. . That rule, as formulated in 2 Jarman on Wills, page 332, will best illustrate the position here. It is : "The rule simply is, that where an estate of freehold is limited to a person, and the same instrument contains a limitation, either mediate or immediate, to his heirs, or the heirs of his body, the word "heirs' is a word of limitation,—*i. e.*, the ancestor takes the whole estate comprised in this term. Thus, if the limitation be to the heirs of his body, he takes a fee tail ; if to his heirs general, a fee simple." The rule operates upon the words of inheritance without affecting the words of procreation, so that if, in any case, the words, "heirs of his body," or other equivalents sufficient to create an estate tail, are used, a fee tail is vested in the first taker, and not the fee simple, as seems to be supposed. Therefore, if the rule be applied, Mrs. Lehndorf would, at common law, be seized of an estate in fee tail, and brought directly within the terms of section 6 of the Conveyance act, before cited. When, therefore, Mrs. Lehndorf, joined by her husband, mortgaged the land to Humphrey, it was not in her power to incumber the fee, and that estate passed to and vested in her two children then living, unincumbered by the lien created by the mortgage.

But it is said this mortgage was given for the purchase money of the land, and that in some way, not clearly defined in argument, a lien therefore exists upon the estate conveyed. If it is intended thereby to insist that a vendor's lien exists, the answer to such a contention would be three-fold. A vendor's lien upon real estate is a creation of the courts of equity, upon the equitable consideration that where the vendor has taken no security for the purchase money, and done no act showing an intention to waive the lien, it is presumed that it was not the intention of the parties that one should part with and the other acquire the title without payment of the purchase price of the land. It exists, if at all, independent of any contract, is personal to the vendor, and whenever, from the circumstances, the court can infer that he did not rely upon the lien at the time of the sale, or subsequently abandoned it as security, it will be held to be waived. (Pomeroy's Equity; *Cowl* v. *Varnum*, 37 Ill. 184; *Richards* v. *Leaming*, 27 id. 432.) Thus, taking an independent security will discharge the lien. *Conover* v. *Warren*, 1 Gilm. 432.

It is manifest that when the deed, and mortgage back to secure the purchase money, are parts of a single transaction, as in this case, one estate may be conveyed by the deed and a wholly different interest conveyed by the mortgage,—as, if the fee be granted by the deed, and an estate for life or for years mortgaged. The power of the parties to so contract can not be questioned. If the vendor saw proper to take security by mortgage upon less than the whole land, or upon less than the estate conveyed, for the unpaid purchase money, there is no reason why it would not be a valid contract, and the residue of the land or estate pass by the deed, unincumbered by any lien in his favor.

But the bill in this case is for foreclosure of the mortgage given to secure the purchase money, and proceeds upon the theory that in equity the mortgage attached to and became a lien upon the fee which is alleged to be in Mrs. Lehndorf, and

is to enforce the security under the contract,—a theory wholly inconsistent with the preservation of a vendor's lien. Again, as before said, the lien created by implication in favor of the vendor is personal to him, and is not assignable or transferable, even by express contract between the vendor and an assignee. It can be enforced only by the vendor himself. (*Richards* v. *Leaming, supra; Keith* v. *Horner,* 32 Ill. 524; *McLaurie* v. *Thomas,* 39 id. 291; *Markoe* v. *Andras,* 67 id. 34; *Moshier* v. *Meek,* 80 id. 79.) This is an established rule in equity, and is an insuperable obstacle to the enforcement of a vendor's lien by defendant in error. Such liens are secret, often productive of gross injustice to others dealing in respect of the property to which they attach, and courts of equity will not extend them beyond the requirements of the settled principles of equity.

But it is said that the deed and mortgage being parts of the same transaction, the title would not vest as against the purchase money, and the principle so often announced by this and other courts, that in such case there is no interregnum between the effective operation of the deed and mortgage in which judgment liens and the like can attach, as against the mortgage security, is sought to be invoked. The doctrine can have no application to the facts of this case. It is true, as so often held, that in the case stated, the making and delivery of the deed and mortgage being simultaneous, and parts of one transaction, are to be construed as one act; *eo instanti* upon the delivery of the deed the mortgage becomes effective, and the title passes to the mortgagor, subject to the lien of the mortgage. The mortgage attaches to the title conveyed in its transmission from the vendor to the vendee, and, obviously, is effective in arresting the passage of the title so far only as it reconveys the estate to the original vendor. Therefore, if, by deed, a life estate is conveyed to one and the fee to another, and, as part of the same transaction, the life estate is mortgaged by the grantee thereof to the grantor, the mort-

gage would attach to the life estate, and the life tenant would take subject to the lien, and the fee would pass unaffected by the mortgage.

It is also insisted that the children of Mrs. Lehndorf are mere volunteers, who paid nothing, and therefore, in equity, their interest should be subjected to the payment of this purchase money. We know of no recognized principle of equity by which the case can be affected by that consideration. If it be conceded they paid nothing, it is apparent defendant in error has no such equity as should prevail against their title. It is not enough that they are not purchasers for value,—the party questioning their title must show himself legally or equitably entitled to the relief. When defendant in error purchased the notes of Humphrey, he had notice, by the record, of the state of the title, and that the mortgagor, in the mortgage given to secure them, had a life estate only in the lands mortgaged. He must be presumed to have known that the mortgage conveyed, subject to the condition of defeasance, the life estate of Mrs. Lehndorf, only, and also that the assignment of the notes, or of the notes and mortgage, could not transfer to him any equitable lien Humphrey might have had upon the fee in the land for the unpaid purchase money.

Two thousand dollars of the consideration was paid at the execution and delivery of the deed, but by whom does not appear. If the children paid nothing, it was neither unlawful nor immoral for the parents, or either of them, to provide for the future welfare of their offspring by purchasing this land and having the fee deeded to them, if done without fraud as to existing creditors, and with the knowledge and consent of their grantor. No fraud is alleged or shown, nor is it shown that the mortgage upon the life estate of Mrs. Lehndorf was or is inadequate security for the money remaining unpaid to defendant in error; but if it was, it could make no difference, as we have seen it is not purchase money in his hands, in any sense, in which a lien can be enforced in equity, otherwise than

by a foreclosure of the mortgage upon the estate and interest of which Mrs. Lehndorf was seized,—that is, her life estate in these lands.

It appears by the bill that the deed was made to Mrs. Lehndorf and her heirs by her present husband, etc., at her request. The grantor had full knowledge of the grant, and took back a mortgage to secure the unpaid purchase money, executed by Mrs. Lehndorf and her husband, only. Defendant in error purchased the notes with notice of the facts as disclosed by the record, and if he must lose because of the inadequacy of his security, he can not complain.

The decree of the circuit court will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*