William H. Hudelson

v.

M. J. Wilson et al.

Penina J. Hudelson

v.

Same.

*Real Estate—Conveyance of—Vendor's Lien—Consideration—Agreement to Preach—Breach.*

1. A vendor's lien upon real estate is only permitted as a security for the unpaid purchase price, in money or its equivalent, and not for any other indebtedness or liability. There must be a certain ascertained and absolute debt owing for the purchase price.

2. If the consideration is for the performance of an act, the non-performance of which gives rise to a claim for unliquidated damages, there is no lien.

3. In the case presented, this court holds, in view of the evidence, that there is no ground for enforcing a vendor's lien upon premises named, and declines to interfere with the decree for the defendants.

[Opinion filed September 11, 1891.]

Appeal from the Circuit Court of Clay County; the Hon. C. S. Conger and the Hon. W. C. Jones, Judges, presiding.

Messrs. J. A. Barnes, Hagle & Shriner and Chesley & Boyles, for appellants.

Messrs. B. D. Monroe and Rufus Cope, for appellees.

SAMPLE, J.    These cases were consolidated in this court for the purpose of hearing, and briefs and arguments in one, cover both cases.    The principle of law involved in both cases is the same.

The bills allege that the complainants were seized of certain lands in Clay County, Illinois, on the 31st day of May, 1886, and on said date conveyed the same to the defendant, M. J. Wilson, by warranty deeds; that the consideration named in said deeds was $300 and $700 respectively; that no money· was paid or promised to be paid by the defendant; that the real consideration was that M. J. Wilson, who was a minister, would, for a period of ten years from June 1, 1886, occupy the pulpit of the Louisville Baptist Church as minister in charge, and that his family would permanently locate in Louisville, and that during said ten years the complainants, who were members of said church, should be relieved from any part of the expense of paying for the services of a pastor for said church; that said M. J. Wilson entered upon said work as minister at Louisville and preached about two years, then abandoned the work and failed and refused to further act as such minister according to his agreement; that said lands were in fact worth $300 and $920, respectively; that complainants were in fact paying in advance the value of said lands for the continued services of a minister for the period of ten years and to relieve themselves of any expenses for such services during said time; that in payment for said lands, said Wilson has given two of the ten years' service and made no other payment and is indebted to complainants for four-fifths of the value of said lands; that complainants took no security for the payment of the consideration and never had any other security than a vendor's lien; that complainants have always borne a large part of the expenses in paying for the services of pastors of said church, which is well furnished and was built largely at the expense of the complainants, and that said church organization is still in existence.    The bills pray that an account be taken of the amount still due complainants and that said Wilson may be decreed to pay them said sum which may be declared to be a lien on said lands and that in default

of said payment the property be sold and the proceeds applied thereto.

The answers admit that the land was conveyed to defendant, and that no money consideration was paid or promised to be paid by defendant therefor; they aver that the consideration was that the defendant would remove his family to Louisville, locate them there, and take charge of and preach for said church, so long as a respectable majority of the members desired his services and the church paid him a salary for his services, and that complainants should not be called upon by defendant to pay for any part of such salary; that the defendant took charge of said church as pastor on the 22d day of June, 1886, under said contract for an indefinite time; that owing to dissensions in the church, the defendant, at the January meeting, 1887, tendered his resignation for the reason that said church failed to pay him the salary agreed upon, which resignation was rejected by a vote of the church members; that at the June meeting, 1887, the defendant offered to preach for a salary of $250 per year, which proposition was refused, and the resignation offered at the prior January meeting was voted upon and received; that at the October meeting, 1887, the defendant took charge of said church again as its pastor upon the express consideration that the church should pay him a salary of $250 per year for one-half his time, and that the church would stand by him and work with him; that he thus continued the work for one year, after which time he was not re-employed; the defendant admits that the land was worth $1,000, but avers that he was poor and that it furnished him but little or no subsistence. The record shows that the defendant died after the suits were brought and his heirs were substituted as defendants. The bills and answers show fully the theory of the respective parties. The evidence further discloses that under the law governing the organization, the church itself had the right to call and discharge the pastor, and further shows that the defendant was a poor man and had a family to support, and that the church was to pay him some salary in addition to what Hudelson paid him in land in order to provide for his support; that there

was some dissatisfaction in the church with the pastor which caused him to tender his resignation, which was finally accepted, and thereupon these suits were brought.

It will be observed that neither in the bills nor the evidence is there any charge that the defendant obtained these deeds with any intentional wrong or fraud. The bills are founded on a breach of contract to pay for the lands in services. It is expressly averred in the bills and admitted in the answers that there was *no money consideration promised or agreed to be paid by the defendant.* Without commenting on this contract, which in its nature was necessarily subject to the will of the church, as it might be manifested at any time, and therefor necessarily uncertain and indefinite as to the time it could be continued, it is considered, from a legal point of view, that the case hinges upon the admitted character of the consideration. The legal question is, is there a vendor's lien in such a case as this?

The recognized doctrine is, that such a lien is only permitted as a security for the unpaid purchase price and not for any other indebtedness or liability. There must be a certain, ascertained, absolute debt owing for the purchase price.

The lien does not exist in behalf of any uncertain, contingent or unliquidated demand. Pomeroy's Eq. Jur., Vol. 3, Sec. 1251, citing numerous cases in note 1.

If the consideration of the sale is something other than money, or if the amount of the consideration is uncertain and unliquidated, no lien will arise. See Perry on Trusts, 2d Ed., Vol. 1, Sec. 235, with various authorities cited in support of the text.

It will not arise where the consideration of the deed is that the grantee shall support the grantor for life: Chase v. Peck, 21 N. Y. 581; Artu v. Brown, 44 N. H. 102; Brawley v. Catton, 8 Leigh, Ves., 522; nor where the consideration is an agreement to deliver a certain quantity of cotton by a certain time: Harris v. Hanie et al., 37 Ark. 348; nor where the consideration is the vendee's obligation to discharge the liability of a third person: Harvey v. Kelley, 41 Miss. 490. To create a vendor's lien there must be a debt for unpaid purchase

money, in a fixed amount, due directly to the vendor. Lawson, Property Rights, Vol. 6, Sec. 3105, p. 5054. If, however, land is sold for a price or consideration *in money*, which it is agreed may be paid in the note of a third party, or in personal services, the lien exists and may be enforced. Young v. Harris, 36 Ark. 166. This case makes the distinction that is to be observed in all the authorities. The consideration must be a fixed amount, determinate in and of itself, without extrinsic proof to measure its *value in money*. If the consideration is for the performance of an act, the non-performance of which gives rise to a claim for unliquidated damages, there is no lien.

It is suggested, however, and pressed with some earnestness, that our Supreme Court in the case of Manning v. Frazer, 96 Ill. 279, has laid down a different doctrine, wherein, as is claimed, a vendor's lien was allowed, although, as is said, the amount of the consideration was wholly uncertain and contingent and the damages unliquidated. This statement of the force and effect of that case shows a misconception of the doctrine there laid down. That case holds that the lien was upon the realty sold, the consideration being measured by the number of tons of coal mined, as if the consideration was so many dollars per acre for a certain described tract of land, the number of acres in which was the subject of definite ascertainment. That was all that was decided in that case. It in principle runs directly along the line of the authorities above cited, and approves the doctrine there laid down, as will appear by the following language used on page 288 of the opinion : " Again it is claimed, the agreement to pay for the coal is but a collateral covenant, and in support of the proposition, cases are referred to where conveyances were made and the vendee covenanted to pay the grantor an annuity for life, or to support him for life, or to pay money to others, which were held to be collateral covenants, and a vendor's lien did not attach. *The cases are no doubt correctly determined* but they are entirely unlike this. Here the covenant is to pay the *purchase money* directly to the vendor in the manner specified." It will be further observed, as an indication how

chary courts are to extend the doctrine of a vendor's lien, that the Manning case was decided, as it was, by a bare majority of the members of the court, three of the justices dissenting.

In these cases now being considered there was, as heretofore stated, no money consideration, and therefore there was no debt, in the proper sense of that term. The failure to render the services, even taken in the broad sense charged in the bill, did not create a debt, but a mere liability for unliquidated damages for non-performance, an action to recover which would sound in damages alone. There is no authority for enforcing such a claim as a vendor's lien. The decree of the Circuit Court dismissing the bill was correct and will be affirmed.

*Decree affirmed.*