## Alexander Ross et al. v. Wallace G. Clark et al.
### Gen. No. 12,447.

1. EQUITABLE LIEN—*when will not be decreed under doctrine of doing complete justice.* A court of equity in enforcing a vendor's lien will not, under the doctrine that having jurisdiction of the case it will re-

Ross v. Clark.

tain it in order to do complete justice between the parties, add to the amount of such lien damages suffered by virtue of fraudulent representations.

2. VENDOR'S LIEN—*when will be enforced, when not.* A vendor's lien is not favored by the law and will not be extended beyond the requirements of the settled principles of equity and will not be enforced when the court can infer from the circumstances of the case that the vendor did not rely upon the same at the time of the sale. The lien is good and enforced only where there is a debt for unpaid purchase price in a fixed amount due directly to the vendor.

3. VENDOR'S LIEN—*when does not arise.* When there is a completed sale or exchange and a part of the consideration is a promise, agreement or covenant on the part of the vendee or of one of the parties to the exchange to do something in the future other than the payment of a fixed, definite and certain sum as a part of the purchase price, the lien does not exist and money due for the breach of the covenant is not then purchase money, but damages, and the remedy is an action on the agreement for their recovery.

Bill to enforce vendor's lien. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed May 7, 1906.

**Statement by the Court.** Alexander Ross and William R. Plum, on February 3, 1905, filed their bill of complaint in the Circuit Court of Cook County, on the chancery side thereof, against Wallace G. Clark and wife, J. Milton Trainer and wife, Arthur R. Clark and wife, Frederick W. Rawson, M. E. Greenebaum, and the unknown holders of certain notes in the bill described. The bill set up an agreement in writing between Wallace G. Clark and Milton Trainer on the one side, and the complainants on the other, for an exchange of certain real property, respectively owned by the parties to the agreement. The property to be received by the complainants in the exchange consisted of three flat buildings and the lots on which they stood; that to be conveyed by the complainants, of certain vacant lots. The bill charges that to induce the complainants to convey to them these lots, and as a part of the consideration for said conveyance, Clark and Trainer, by the written agreement, undertook, first, to pay monthly all rents of flats in said buildings that were then vacant and unrented at certain scheduled rates affixed to said agreement, for one

year from the delivery of the deeds in exchange, provided that such payments should cease whenever responsible tenants were obtained on terms of not less than one year at the scheduled rates aforesaid. Second, to place suitable flower vases at the entrances to each of said buildings. It also charges that, at the time of the exchange, certain flats or apartments were vacant and unrented, and by reason of said agreement Clark and Trainer became obligated, *as a part of the consideration money for the conveyance of said lots in Bayard & Palmer's Addition,* to pay monthly the said several sums for one year from the delivery of the deeds, *unless responsible tenants were sooner obtained for not less than one year* at the scheduled rates.

It then alleges that "they (*i. e.* Clark and Trainer) failed to make payments * * * in the following particulars." They executed a lease to one W. R. Stephens, an irresponsible person, of one flat, against whom, on August 4, 1904, the complainants obtained an uncollectible judgment for rent for $296.32. The complainants charge that in connection with said flat there is now due, by reason of the premises, $400, "*part and parcel of the purchase money*" for the said lots of complainants conveyed to Clark and Trainer. "They placed a tenant in another of said vacant flats, and received rent therefor, how much the complainants are unadvised," but say that $200 is due on account of this flat, "part and parcel of the purchase money of said lots," and also a further expense of $50, because by reason of Clark and Trainer placing this tenant in the premises without requiring a lease for a year, and turning over said lease to the complainants, the premises were damaged to that extent in decorations.

Further, the bill charges that Clark and Trainer failed to place suitable vases at the entrance of the flat buildings, and that said vases could not be purchased for less than $150, and by reason of such omission, complainants are entitled to a lien on the lots they conveyed to Clark and Trainer for $150, "part and parcel for the purchase price of the lots." A similar claim is set up for $150 for certain

"suitable settees," which Clark and Trainer represented they had ordered, but which have never been delivered.

The bill then proceeds to allege that said flat or apartment buildings were fraudulently represented by said Clark and Trainer to be well rented (except five certain flats described in the agreement as vacant) to responsible tenants at the scheduled rates set forth in the agreement, but that several of the tenants were irresponsible and left the apartments so rented to them by Clark and Trainer shortly after the delivery of said deeds, and the complainants have been unable to collect anything from them since, which resulted in damage to the complainants of $2,000.

Also, that to induce the complainants to make said agreement and deeds of exchange, Clark and Trainer fraudulently represented that all of the then outstanding leases were *bona fide* contracts, while, as a matter of fact, " many, if not all, of said outstanding leases were false in this, that from one to three or four months' rent were given to the tenants in consideration of their executing leases for the monthly amounts stated therein to be paid, so that while in fact the leases called for a stipulated aggregate per annum, the real amount was much less, and in consequence complainants were unable to obtain new leases at the expiration of those in force at the time of the purchase, without submitting to a corresponding reduction. Said premises were purchased largely on account of the representations as to the income therefrom based primarily on the rentals as fixed by said leases, and of the vacant apartments at the same general rates, but complainants have been unable to secure tenants therefor at such rentals, and by reason thereof have suffered damages to the amount of twenty thousand dollars."

Further the bill states that deeds were exchanged August 29, 1903, and it was not until many months later that complainants learned that the outstanding leases did not truly represent the real agreement of the parties thereto; also, that the records of Cook county show that Wallace G. Clark and wife and Trainer and wife, on October 22, 1903,

gave a warranty deed which has been recorded, to Arthur R. Clark, of certain of the lots obtained by them from the complainants, but that Arthur Clark is a brother of Wallace G. Clark, and the conveyance was without consideration and merely colorable; that April 11, 1904, Arthur R. Clark and wife gave to Frederick W. Rawson a trust deed to secure $40,000 on some of the lots thus conveyed to him, and that said deed was duly recorded; that on April 7, 1904, Arthur R. Clark and wife gave to M. E. Greenebaum a trust deed to secure $14,000 on other of the lots conveyed to him, and that Wallace G. Clark and wife and Trainer and wife, June 7th, gave to M. E. Greenebaum a trust deed to secure $15,000 on one of the lots obtained from complainants; on June 7, 1904, a trust deed to secure $1,500 on another of said lots, on September 28, 1904, a trust deed to secure $50,000 on certain other of said lots, and on October 4, 1904, a trust deed to secure $6,000 on still others—all which trust deeds were recorded, but whether or not said money on said various trust deeds has been actually paid over to said grantors, or whether said obligations are *bona fide*, complainants are unadvised.

The bill then proceeds to pray that the court will ascertain the amount of the unpaid purchase money for the lots conveyed by the complainants now owing and unpaid, with interest thereon and the damages due and owing the complainants by reason of the premises, and that by decree of the court a vendor's lien be declared upon said lots for the amounts so due and owing, and that the court direct a sale of the lots to pay them, and enter a deficiency decree for any balance; that the court will also ascertain whether or not the said trust deeds are a *bona fide* lien on said premises, and that if so, and they are further secured on other property, said property shall be first exhausted in their satisfaction, and for further and other relief.

Rawson and "the unknown holders of notes, etc.", were not summoned nor did they appear to answer the bill. The other defendants all filed general demurrers, which were sustained by the chancellor below. The complainants

electing to stand by their bill, it was thereupon dismissed for want of equity, from which the complainants appealed to this court.

WILLIAM P. BLACK and JAMES H. HOOPER, for appellants.

TENNEY, COFFEEN, HARDING & WILKERSON, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

The bill in this cause was evidently filed principally as an attempt to enforce under the equitable doctrine of a vendor's lien a claim arising from alleged fraudulent misrepresentations inducing the exchange of real estate.   This is not only evidently the case, but it is practically admitted by appellants' brief and argument. · Counsel apparently rely strongly on the proposition that for two or at most three items of their claim, amounting, in the aggregate, to less than $1,000, the complainants have a vendor's lien, and that equity, taking jurisdiction of the cause for the purpose of enforcing that lien, will do justice between the parties as to all germane matters of equitable jurisdiction, and add to the sums decreed to the complainants, for which the land conveyed by them will stand burdened, the much larger amount by which they claim they have been damaged by certain fraudulent misrepresentations of the defendants, about the value and condition of the real estate taken in exchange.

It is manifest that by themselves such misrepresentations would furnish no ground for the equitable relief of the enforcement of a vendor's lien.   They might, if proven, as it seems to have been the intention to allege them, furnish at law a basis for damages in an action for deceit.   Such an action would involve the right to a jury trial.   They might also, in equity, furnish ground for an action to rescind the contract of exchange *in toto*, but this is a very different equitable relief from that claimed here, which looks towards affirming the contract, keeping the consideration already received and securing the damages upon the property exchanged.   This, as the Supreme Court of Michigan in

Graham v. Moffatt, 119 Mich. 303, remarked in a similar case, would "revolutionize the doctrine of rescission which requires a party to rescind a fraudulent contract *in toto*."

It seems to be conceded that this is the law concerning the alleged damages by misrepresentations; but it is urged that if the two or three items before alluded to establish a vendor's lien, such damages can properly be ascertained and tacked on the decree, and that even if they cannot, the court below was nevertheless in error in sustaining a general demurrer to the bill in which certain items described are thus a sufficient basis for a vendor's lien.

In considering the case alleged to be made by the description of these items in the bill, it is to be noted generally that it is the declared rule in Illinois that a vendor's lien is not favored by the law, should not be extended beyond the requirements of the settled principles of equity, and will not be enforced when the court can infer from the circumstances that the vendor did not rely on it at the time of sale. Richards v. Leaming, 27 Ill. 431; Cowl v. Varnum, 37 Ill. 181; Lehndorf et al. v. Cope, 122 Ill. 317; Franklin v. Hillsdale Land & Cattle Co., 70 Ill. App. 297.

The lien is given and enforced only when there is a debt for unpaid purchase money in a fixed amount due directly to the vendor. Koch et al. v. Roth, 150 Ill. 212, 224; and authorities there cited.

It is true that specific articles of personal property may at an agreed pecuniary value be substituted for cash money in the consideration without destroying the right of the vendor to his lien. But when there is a completed sale or exchange, and a part of the consideration is a promise, agreement or covenant on the part of the vendee or of one of the parties to the exchange to do something in the future, other than the payment of a fixed, definite, ascertained sum as a part of the purchase price, the lien does not exist. The money due for a breach of the covenants is not then purchase money, but damages, and the remedy is an action on the agreement for them. Koch v. Roth, 150 Ill. 212; Whitely v. Central Trust Co., 76 Fed. Rep. 74; Hudelson

Ross v. Clark.

v. Wilson, 40 Ill. App. 29; Parrish v. Hastings, 102 Ala. 414; McCandlish v. Keen, 13 Gratt, 615; Patterson v. Edwards, 29 Miss. 67; Brawley v. Caton, 8 Leigh, 522; McKillip v. McKillip, 8 Barb. 552; Parrott v. Sweetland, 3 Myl. & Keen, 655; Winter v. Lord Anson, 1 Sim. & Stu. 435; Clark v. Royle, 3 Sim. Ch. 500.

We consider the case of Manning v. Frazier, 96 Ill. 279, as marking the limit to which the enforcement of a vendor's lien in this state will be carried. It is easily distinguishable from the case at bar. So is Groves v. Miles, 58 Ill. 338, 71 Ill. 376 and 85 Ill. 85, where the title was actually retained as security for the performance of an agreement and the sale allowed was in effect a foreclosure of a mortgage. A mortgage may of course be made to secure the performance of any agreement or covenant.

We consider those allegations of the bill in this case, which the complainants argue are statements of things that constitute "a part and parcel of the purchase money" due them, to be in fact allegations of agreements or covenants made by the defendants (which agreements or covenants may be said to have been taken by the complainants instead of a portion of the purchase money), and of a breach of those agreements or covenants for which damages (which, however, under the somewhat vague allegations of the bill can hardly be considered ascertained, determined or liquidated) are due to the complainants. The statements that these alleged damages are "part and parcel of the purchase money," are conclusions of the pleader manifestly. We do not agree with them, nor did the chancellor below, who consequently properly sustained a demurrer to the bill. His decree is affirmed.

*Affirmed.*