LEANDER P. PHELPS

*v.*

JOB J. REEDER *et al.*

1. AGENCY—*what constitutes.* One of two tenants in common of land purchased his co-tenant's interest therein. There were mechanics' liens upon the premises, which were to be paid off by the purchasing tenant, by allowing a sale to take place under the anticipated decree and having him become the purchaser, and he was to be allowed as a credit on the purchase-money, one-half of the full amount of those debts : *Held*, that this agreement constituted the purchaser the agent of his vendor in respect to the payment of those liens.

2. SAME—*agent cannot make profit out of the matter of his agency.* And, by reason of the relation existing between the parties, of principal and agent, the latter could not speculate in regard to the discharge of the liens, at the expense of the former.

3. So that whatever abatement of the liens the agent may have procured, · he would be required to allow it to his principal.

4. TRUSTEE—*what constitutes.* In such case, the purchaser, retaining the purchase-money in his own hands with which to discharge the incumbrances on the property purchased, held the fund as trustee for his vendor.

5. SAME—*trustee cannot make profit out of the trust fund.* And holding the money as trustee, if, in applying it in discharge of the incumbrances, as was agreed upon, he makes a profit, he must account therefor to his *cestui que trust.*

6. GARNISHMENT — *defect in form of writ, waived by appearance.* When a party appears and answers a writ of garnishment, he thereby waives any want of form in the writ.

7. SET-OFF—*in equity.* A judgment against two jointly cannot be set off in equity against a debt due to one of them individually, except it be alleged and proven that the other is insolvent.

APPEAL from the Circuit Court of McDonough county; the Hon. JOHN S. BAILEY, Judge, presiding.

The facts in this case fully appear in the opinion.

Mr. J. S. BAILEY, for the appellant.

Mr. D. G. TUNNICLIFF, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was a proceeding in chancery presenting, substantially, the following facts:

On the 22d day of September, 1857, Phelps, the appellant, and Reeder, the appellee, were in joint possession of certain mill property in the county of McDonough, Reeder in his own right, and Phelps as mortgagee of one Dewey, who had been ·tenant in common with Reeder. On that day Phelps bought the interest of Reeder, agreeing to pay him therefor $2,425. The property, however, was at that time subject to certain mechanics' liens, which were being prosecuted, and the precise amount of which was undetermined, as, also, to certain judg-

ments against Reeder. These incumbrances, it was stipulated in the contract, were to be paid off by Phelps, by allowing a sale to take place under the anticipated decree, and having him become the purchaser; and it was further stipulated that he should be allowed, as a credit on the purchase-money, "one-half of the full amount of the principal, interest and costs of suit on said debts and claims for mechanics' labor and material." It was further agreed that the balance due Reeder should be paid in eighteen months from the sale, and that Phelps should not delay the sale. The sale was held on the 15th of January, 1858, and the property purchasd by Phelps for $2,305.92. He also paid a part of the individual judgments against Reeder, and in the months of February, March and May he bought six judgments, rendered before a justice of the peace, three of which were against Reeder alone, and three rendered against Reeder & Dewey. On the 24th of December, 1857, Reeder executed to Robert L. Howell his ten promissory notes, seven of which were for $95 each, two for $90, and one for $80, and on the 15th of January, 1858, Reeder confessed ten several judgments on these notes before a justice. On the 18th of January, 1858, Howell garnisheed Phelps on seven of these judgments, who appeared, answered and was discharged, and on the 8th of February, Howell appealed from the judgment of discharge to the Circuit Court. Thereupon Phelps filed his bill to enjoin the further prosecution of said processes of garnishment, alleging that, by his discharge of the mechanics' liens, by his payment of the individual judgments against Reeder, and by the judgments against Reeder before a justice of the peace, which he had bought, and for which Reeder was now indebted to him, the purchase-money on the mill property was more than paid. Howell answered, and also filed a cross-bill. Proofs were taken, all objections to the jurisdiction were waived, and on the hearing the court rendered a decree finding the sum of $1,467 to be still due on the contract of sale, and directing that there should be paid out of it, first, the amount of the seven judgments upon which Phelps had been garnisheed; secondly, the three judgments before a justice rendered against Reeder

individually, and bought by Phelps, the amount due upon which judgments Phelps was allowed to retain; and, thirdly, that the residue of the $1,467 should be applied on the three judgments in favor of Howell against Reeder, on which no process of garnishment had been issued. From this decree Phelps appealed.

It appeared, by the pleadings and proofs, that, after the purchase by Phelps, and before the sale under the mechanics' liens, he had bought these liens from their respective owners at a large discount. The real controversy in this case grows out of this circumstance, Phelps insisting that he is entitled to a credit for one-half of the amount of the liens, while Reeder and Howell claim that he should be allowed only one-half of the sum he actually paid. It is a question as to which we entertain no doubt whatever. Apart from the relation in which the parties stood to each other as tenants in common, the agreement substantially made Phelps the agent of Reeder for the purpose of discharging the liens, and while standing in this relation, he could not speculate in regard to the liens, at the expense of his principal. That portion of the agreement relating to this matter is as follows:

" *Whereas*, said property is subject to sundry liens against Reeder & Dewey, for materials for building and repairing said property, for mechanical labor on the same, and to enforce some of said liens, suits are now pending in the McDonough Circuit Court, and also a suit is pending in said court to foreclose said mortgage, executed to said Phelps by said Dewey, and

" *Whereas*, said Phelps has agreed to pay said Reeder twenty-four hundred and twenty-five dollars for said Reeder's interest, sold and conveyed to him as aforesaid, in the following manner:

" Said Reeder is reasonably and legally bound to pay one-half of said liens and costs, but the amount of said liens cannot now be ascertained nor the costs to enforce which it will amount to. It is agreed that said Leander P. Phelps shall, at the sale of said property, under the judgment or decrees that may be rendered in said suit for mechanics' liens and liens for materials,

bid the full amounts due thereon, for principal, interest and
costs, or otherwise fully pay and discharge the same as liens
against said Reeder & Dewey, and said Reeder is to allow said
Phelps in and toward the payment of said twenty-four hundred
and twenty-five dollars, one-half of the full amount of the
principal, interest and cost of said suit on said debts, and claims
for mechanics' labor and material, now brought against said
Reeder & Dewey, and for which they are responsible as liens
against said property."

In drawing this agreement, the parties probably did not con-
template that the liens would or could be bought up for less
than their face. As the property was much more than sufficient
to discharge them, they used language which looked only to
their payment in full. They provided that Phelps should
attend the sale, and "bid the full amounts due thereon for
principal, interest and costs, or otherwise fully pay and dis-
charge the same," and it is then provided that Phelps shall be
entitled as a credit to "one-half of the full amount of principal,
interest and costs." This last clause is to be construed in con-
nection with that which provided for the purchase by Phelps at
the sale "for the full amount of principal, interest and costs."
No other contingency was contemplated, and if the respective
owners of the liens had retained them, and Phelps had bought
at the sale, the letter of the contract would have been carried
out by allowing him a credit for one-half the amount. This
language as to the amount of the credit was used, merely
because it was assumed that it would be necessary to pay the
liens in full. But in the matter of discharging the liens,
whether by purchase or private payment, or by bidding at the
sale, Phelps was acting merely as Reeder's agent as to the half
of the property which Reeder owned. This contract, almost
in terms, makes him agent. It provides that he shall attend
the sale and bid in the property, or otherwise discharge the
liens. In whose behalf is he to do this? For his own protec-
tion in part, it is true, but equally for the benefit of Reeder,
who, contemporaneously with this contract, has given him a

deed of general warranty. And with whose money is he to do this? Clearly with the money of Reeder which Reeder has allowed him to retain for that express purpose. Acting then as Reeder's agent to discharge the liens, and with Reeder's money in his pocket to be used for that object, it would be a violation of the most familiar principles of equity to allow him to speculate with these funds in reference to the liens for his own benefit. Whatever abatement of the liens he procured must be allowed to Reeder to the extent of his interest in the property. Phelps really held the money as trustee for Reeder, and if, in dealing with trust funds, the trustee makes a profit, he must account therefor to his *cestui que trust.*

There was no error in the decision of the Circuit Court on this main point in the case, nor was there any in the details of the decree. The garnishee process on seven of Howell's judgments was served before Phelps bought his judgments and therefore had precedence. As against the other three judgments of Howell, the court properly allowed his own judgments to take precedence, so far as his judgments were capable of being treated as a set-off. But the judgments against Reeder & Dewey jointly could not be set off against a debt due Reeder individually in the absence of an allegation in the bill and proof upon the hearing, of Dewey's insolvency.

Objections are taken to the writs of garnishment as informal. But Phelps appeared and answered and thus waived whatever want of form there may have been in the writs.

It is also urged that the contract between Phelps and Reeder had been assigned before the garnishee process issued. But we think the proof shows otherwise. We find no error in the record.

*Decree affirmed.*