ALFRED BOOTH *et al.*

*v.*

PATRICK J. HYNES *et al.*

1. PAROL EVIDENCE—*as to the consideration of a deed.* While the provisions of a deed can not be contradicted by parol, it is competent to prove by that character of evidence that the true amount of the consideration which passed between the parties was different from that expressed in the deed.

2. NEW TRIAL—*verdict against the evidence.* Where a verdict has been given against the evidence, or where there is no evidence at all to support it, the court will grant a new trial. There is no rigid and inflexible rule on this question. It is the duty of the court to see that the verdict executes justice between the parties—that it is a fair, honest and legitimate conclusion, logically drawn from all the evidence in the case.

APPEAL from the Superior Court of Chicago; the Hon. WILLIAM A. PORTER, Judge, presiding.

The opinion states the case.

Messrs. CLARKSON & VAN SCHAACK, for the appellants.

Mr. H. M. SHEPARD, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The only question presented by this record, which we deem necessary to be considered, is, whether the evidence sustains the finding of the jury.

The declaration is in assumpsit, and contains only the common counts. An extended account, with the various items specified, was filed with the declaration, showing the character of the claim of the plaintiffs against the defendants.

It appears, from the evidence, that in 1866 the appellants were the owners of several leases for certain "oil wells" or

"oil well" property, in Venango county, Pennsylvania. In May, of that year, they entered into a written contract with appellees, in which it was agreed, for a consideration therein stated, that appellees would do, and have done, certain work specified, on the property, in and about sinking the wells, for the benefit of the appellants. It was agreed that the appellees should keep a just and true account of all moneys expended on the property for work and labor, and materials furnished, and render monthly statements of the same to J. H. McVicker.

Under this agreement, the appellees did the work, and expended the sums of money for work and labor, and materials furnished, specified in the account filed, on account of the "oil well" property, and for which expenses the appellants were liable under the contract.

It further appears, that in October, 1866, the appellants sent Sidney Booth to Pennsylvania, with a letter showing his authority for that purpose, from them, to close up the affairs of the appellants with the appellees.

It was, however, understood, that if Sidney Booth, when he got there, desired to purchase the property for his own use, he could have the entire interest of the appellants therein by paying all the debts against the property, but in case he did not wish to purchase, he was fully authorized to sell the interests of the appellants, on the best terms he could secure. After seeing the property, and learning the amount of debts against it from the appellees, he determined not to buy for his own use. In pursuance of his authority, Sidney Booth then made a sale of all the interest of the appellants in the property and leases, to the appellees, for the consideration, as stated in the written transfer, of $1892.

There is some conflict in the evidence, as to what was the real consideration for the sale and transfer of the property.

It is insisted, on the part of the appellees, that they were only to pay $1892 of the claims against the well property, the amount estimated by Sidney Booth and Hynes at the time of the sale and transfer, and that the "well property" at that

time owed $557.64 in addition thereto, and that, in their calculations, a mistake of that amount was made. This is the amount in controversy between the parties, and for which this suit was brought.

On the contrary, it is insisted on the part of the appellants, that the true consideration of the sale and transfer of their interest was, that the appellees were to, and did, assume and agree to pay all the debts against the "well property" for which the appellants were in any way liable.

After a most careful examination of all the evidence preserved in the record, we must say that we are not satisfied with the finding of the jury on the issue between the parties. We can not say, in view of all the evidence, that justice has been done.

The testimony tends most strongly to show that the true consideration for the sale and transfer was, not that the appellees would pay any specific amount of the debts, but that they would pay all the debts against the property, for which the appellants were liable. This fact is distinctly testified to by two apparently disinterested witnesses, and the only evidence in the record to overcome their testimony, is that of Hynes, one of the appellees.

The amount of the debts against the property was unknown to Sidney Booth at the time of making the contract. The appellees were in a position to know the exact amount, for it was through their agency that the debts were contracted. The exact amount of the debts was not accurately inquired into at that time. The parties were not contracting about the amount of the debts, but whether the appellees would pay *all* the debts against the property.

No objection is perceived to the competency of parol testimony to establish the true amount of the consideration of the deed between the parties. Its provisions could not be contradicted, but the true consideration passing between the parties could properly be shown by such evidence. 1 Greenl. on Ev. sec. 304, and 26, n. 1; *Kinzie* v. *Penrose,* 2 Scam. 515; *Sidders* v. *Riley,* 22 Ill. 109.

This case falls within the rule laid down in *Southworth* v. *Hoag*, 42 Ill. 446. It was held, in that case, that the rule of law is well established, that where the verdict has been given against the evidence, or where there is no evidence at all to support it, the court will grant a new trial. There is no rigid and inflexible rule on this question. It is the duty of the court to see that the verdict executes justice between the parties—that it is a fair, honest and legitimate conclusion, logically drawn from all the evidence in the case.

The refusal of the court to set aside the verdict and award a new trial, was error, for which this judgment must be reversed and the cause remanded for a new trial. The judgment is reversed and the cause remanded.

*Judgment reversed.*