JACOB KOCH *et al.*

*v.*

AMBROSE ROTH.

*Filed at Mt. Vernon May 5, 1894.*

1. CONTRACT OF SALE—*purchaser to pay indebtedness of vendor—discounting claims—right of vendor to the benefit thereof.* A, failing to succeed in the brewery business, entered into an agreement with B, C and D, by which a company was to be formed, and the property of A was to be turned over to the company so formed and his debts discharged. Stock was to be issued to the amount of $9000, of which $2000 was to be given to A, and he was to be employed by the company. The value of the property turned over by him was $14,000, or $9000 over and above a mortgage on the property. The stock received by A represented to him $2000 of its value. The others did not pay full value for their stock. They received $7000 in stock, representing $7000 in value of the property. For this they paid $7000 of A's debts with only $4415.27, under a settlement with A's creditors: *Held,* that they could not retain the discount, but must account to A for the same.

2. The purchase money agreed to be paid was $14,000, and after applying the stock issued to A, his remaining indebtedness was $12,000, being $5000 due on the mortgage and $7000 of other debts of A. B and the corporation paid this sum, on settlement with the creditors of A, with $4415.27: *Held,* that B and the corporation were liable to A for the amount of this discount at which they settled the indebtedness agreed to be paid,—in other words, they were liable to A for the difference between $7000 and $4415.27, to-wit, $2584.73.

3. SAME—*construed—payment of debts of vendor.* A, the owner of lots having a brewery thereon, sold the real estate to B for $13,000, and personal property connected with the brewery for $1000, the price to be paid as follows: $2000 in shares of stock in a brewery company as soon as organized, and the remainder to be by B applied on the debts of A, including a mortgage of $5000 on the lots sold. The company was formed and the lots conveyed to the company. A received his stock and applied $1000 thereof in payment of the personal property and a like sum toward payment of the $13,000, leaving a remainder of $12,000. A's debts amounted to $12,000. There were ninety shares of stock issued in all, of the value of $9000: *Held,* that the stock issued to A was subject to its proportion of the burden of the incumbrance.

4. VENDOR'S LIEN—*notice to second purchaser.* If the purchaser of land knows that his vendor is still owing a part of the purchase money,

for which no security has been given, he will take the land subject to the implied lien of the original vendor.

5. SAME—*promise to pay creditors of vendor.* Where the grantee of land agrees with the grantor to pay a definite part of the purchase money upon debts of the latter, the lien of the vendor will not be waived. On principle there is no good reason why there shall not be a lien for unpaid purchase money due the vendor, whether such money is to be paid into the hands of the vendor himself, or into the hands of a creditor for his benefit. Equity looks to substance, and not form.

6. SAME—*in case of exchange of lands—promise to discharge liens.* It has been held, that where there is an exchange of lands, a covenant by one of the parties to pay off the liens on the lands transferred by him, as part of the consideration of the land deeded to him, is as much an agreement to pay a part of the purchase money as though there had been an agreement to pay that amount directly to the vendor to enable him to pay off the liens.

7. SAME—*limited to unpaid purchase price.* The grantor's lien is only permitted as a security for the unpaid purchase price of land sold, and not for any other indebtedness or liability. There must be a certain, ascertained, absolute debt owing for the purchase price. The lien does not exist on behalf of any uncertain, contingent or unliquidated demand.

8. SAME—*waiver of the lien.* Where the obligation of the vendee to discharge a definite amount of indebtedness owing by the vendor appears to be substituted for the purchase money, or to be taken instead of the purchase money, or as a direct security for it, the lien is lost.

9. Where land and personal property are sold together, under one contract, at a gross price, without stating the separate price of the land and personalty, so that it can not be determined what part of the gross price is for the one and what part is for the other, there will be a waiver of the vendor's lien, as it will be presumed that the vendor intended to rely upon the personal responsibility of the vendee.

10. CONSIDERATION—*recital in a deed—subject to explanation.* The formal clause in a deed reciting the consideration, is always open to explanation; and such a recital does not waive or destroy the vendor's lien, but is only *prima facie* evidence of payment. The fact of the non-payment of all of the purchase money may be shown, and when such fact appears, a lien may be declared, notwithstanding the formal receipt for the purchase money.

11. It is well settled that the recital of the consideration in a deed or bill of sale is not conclusive on either party, and that it may be shown by parol what the true amount of the consideration is, and how it is to be paid.

12. CORPORATION—*notice to officer or agent.* Notice to the head officer or managing agent of a corporation may usually be regarded as notice to the corporation itself.

13. PAYMENT—*election as to application.* The debtor is entitled to elect on which of two debts a payment shall be credited, and it is the duty of the creditor to so apply it. But this election must be made at the time of the payment. Where the debtor pays generally, or fails to make the application when he might do so, the creditor may apply the payment to whatever debt he pleases, unless there are circumstances which would render the exercise of such discretion by him unreasonable, and unjust to the debtor. If no application is made by either party, the court will make it according to the equity and justice of the case.

14. PRACTICE—*amending bill on the hearing.* It is within the discretion of the court to allow a complainant to amend his bill on the hearing, where the amendment works no injustice or hardship to the defendant. Where the record shows that the defendant is also granted leave to amend his answer, and it does not appear that any exception was taken to the ruling of the court overruling the objection to the complainant's amending his bill, or that any suggestion was made of surprise or of the necessity of a continuance, and there is nothing in the record to show that the defendant was injured by the action of the court, it can not be said that there was any abuse of discretion, or error, in permitting the amended bill to be filed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. A. S. WILDERMAN, Judge, presiding.

Mr. CHARLES P. KNIGHT, for the appellants:

The recital of a consideration in a certain sum does not fix an absolute obligation on the part of the grantee to pay that sum. It may be controlled by a contemporaneous agreement fixing a mode of payment, and providing for a payment of a different amount. *Fort* v. *Richey*, 128 Ill. 502; *Booth* v. *Hynes*, 54 id. 363; *Drury* v. *Holden*, 121 id. 130; *Primm* v. *Legg*, 67 id. 500.

Appellee's bill is framed upon that theory. Courts have no right to make a contract, either by rejecting some of its provisions or by adding new ones, or by placing upon its pro-

visions an arbitrary construction. *Welsch* v. *Savings Bank,* 94 Ill. 191.

There was neither an express trust nor a constructive trust. No fiduciary relation existed between the parties. Appellants were neither trustees, agents, partners, attorneys, tenants in common, etc., of or for appellee. They were purchasers, simply. The parties dealt at arm's length with each other, as in any other case of vendor and vendee. That this is the true view of the case is borne out by the decisions of this court in *Steele* v. *Clark,* 77 Ill. 471, and *Doyle* v. *Murphy,* 22 id. 502. See, also, *Clark* v. *Wright,* 24 S. C. 526; *Bennett* v. *Whitney,* 49 Mo. 58.

The burden of proof is on the party seeking to establish a trust, and the evidence must be clear, full and satisfactory. 10 Am. and Eng. Ency. of Law, 29, 84; *Green* v. *Dietrich,* 114 Ill. 636; *Lehman* v. *Lewis,* 62 Ala. 129; *Whitmore* v. *Larned,* 70 Me. 276.

The vendor can not claim a lien as security for an uncertain demand. If the consideration is not to be money, then no lien is created. If the obligation be for the discharge of a liability to a third party, no lien is created, and where the obligation of the vendee be the payment of the grantor's debts, the lien is lost. Devlin on Deeds, sec. 1256; *Payne* v. *Avery,* 21 Mich. 524; *Patterson* v. *Edwards,* 29 Miss. 67; *Vandoren* v. *Todd,* 2 Green's Ch. 397; *Chapman* v. *Beardsley,* 31 Conn. 115; *Hiscock* v. *Norton,* 42 Mich. 320; *Sears* v. *Smith,* 2 id. 243; *Arlin* v. *Brown,* 44 N. H. 102; *Chase* v. *Peck,* 21 N. Y. 581; *McKillip* v. *McKillip,* 8 Barb. 552; *Brawley* v. *Catron,* 8 Leigh, 522; *McKandlish* v. *Keen,* 13 Gratt. 615; *Dixon* v. *Gayfeve,* 17 Bradw. 421; *Buckland* v. *Packnell,* 13 Sim. 406; *Burns* v. *Taylor,* 23 Ala. 255; *Farrott* v. *Sweetland,* 3 M. & K. 655; *Winter* v. *Lord Anson,* 1 Sim. & Sta. 435; *Clark* v. *Royle,* 3 Sim. Ch. 500; *Jenkins* v. *Doolittle,* 69 Ill. 415, and 55 id. 400.

Messrs. HAY & WINKELMAN, for the appellee:

The question whether the decree was for too large a sum was not made in the Appellate Court, and can not be raised in this court. *Redlich* v. *Bauerlee*, 98 Ill. 137; *Thayer* v. *Peck*, 93 id. 357; *Bank* v. *LeMoyne*, 127 id. 254.

In *Hitchcock* v. *Watson*, 18 Ill. 289, the court say: "An agent or trustee for another can not speculate in the execution of his fiduciary duties or employment, and if he, by compromise or otherwise, liquidates or pays off a debt of his principal or *cestui que trust* at less than he has received for that purpose, he is accountable for the residue." Story on Agency, sec. 211; *Switzer* v. *Skiles*, 3 Gilm. 529.

In *Casey* v. *Casey*, 14 Ill. 127, the court say: "Where confidence is reasonably reposed, that confidence must not be abused. The party relied upon must see that he meets fully and fairly the responsibility of his position, and does not take advantage of it to the injury of the other, and his own advantage."

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a bill filed, as originally drawn, on April 1, 1892, and as finally amended, on December 14, 1892, by the appellee, Ambrose Roth, against the appellants, Jacob Koch, Isadore Probst and The New Athens Brewing Company, to enforce a vendor's lien, alleged to have been created by the sale by Roth to Koch on September 23, 1891, of certain lots in the village of New Athens in St. Clair County owned by Roth, and for which he, on that day, executed a warrantee deed to Koch for an expressed consideration of $13,000.00. The answer denies, that the complainant is entitled to the relief asked for, and prays the same advantage of the answer as if the bill had been demurred to. By decree rendered on December 14, 1892, the Circuit Court found, that there was due the complainant for unpaid purchase money the sum of $2584.73 with inter-

est at five per cent from September 23, 1891, amounting to $2712.78, and that he had a vendor's lien upon the lots for that amount, and decreed that in default of payment within a certain time, the lots should be sold by the master. Upon appeal to the Appellate Court said decree was affirmed, and the present appeal is prosecuted from such judgment of affirmance.

*First,* it is claimed that the trial court erred in permitting the complainant to file an amended bill at the hearing.

The statute provides, that the court may permit the parties to amend their pleadings so that neither party is surprised or unreasonably delayed, and that such amendment shall not be a ground for continuance without an affidavit that the party affected thereby is unprepared to proceed to trial, etc. (Chancery Practice Act, sec. 37; 1 Starr & Cur. Ann. Stat. page 409.) In *Mason* v. *Bair,* 33 Ill. 194, an amendment to the bill was allowed after the cause had been submitted on the evidence, and it was held that its allowance was within the discretion of the court, which would not be controlled unless the amendment worked injustice or great hardship to the defendant. In *Booth* v. *Wiley,* 102 Ill. 84, an amendment to the bill was allowed after the introduction of all the evidence and the argument of the cause; and it was held not to be error, it not appearing that the defendant was prejudiced thereby in any substantial manner. In the present case, the decree recites, that the leave to amend the bill was granted against the objection of the defendants, but they were given leave to file an amended answer; and it nowhere appears, that any exception was taken to the ruling of the court overruling the objection, or that any suggestion was made of surprise, or of the necessity of a continuance. There is nothing in the record to show, that the defendants were in any way injured or prejudiced by the action of the court, and it cannot, therefore, be said that there was any abuse of discretion, or error, in permitting the amended bill to be filed.

*Second,* it is claimed by appellants that the consideration for the purchase of the property was all paid, and that there was no unpaid purchase money for which a vendor's lien could exist as security.

There was a brewery upon the lots sold, and on the same day on which the conveyance of the lots was executed, a bill of sale of the personal property connected with the brewery, consisting of horses, a wagon, beer-tanks, kegs, tools, etc., was executed and delivered by appellee to Koch for a consideration, expressed therein, of $1000.00, making the total consideration for the brewery, including both realty and personalty, the sum of $14,000.00 upon the face of the papers. It is well settled, however, that the recital of the consideration in a deed or bill of sale is not conclusive upon either party; and that it may be shown by parol what the true amount of the consideration is, and how it is to be paid. (*Booth* v. *Hynes,* 54 Ill. 363; *Primm* v. *Legg,* 67 id. 500; *Drury* v. *Holden,* 121 id. 130; *Fort* v. *Richey,* 128 id. 502). The formal clause in a deed reciting the consideration is always open to explanation; and such a recital does not waive or destroy the vendor's lien, but is only *prima facie* evidence of payment. The fact of the non-payment of all the purchase money may be shown, and, when such fact appears, a lien may be declared, notwithstanding the formal receipt for the consideration. (2 Warvelle on Vendors, page 705).

It is shown here, that the appellee received no money upon the delivery of the deed and bill of sale. The amended bill alleges, that Roth sold the land to Koch for $13,000.00, and the personal property for $1000.00, and "that it was agreed * * * that said sum of $13,000.00 and said $1000.00 be paid as follows: $2000.00 in shares of the Brewing Company to said complainant as soon as said Brewing company was organized, and the remainder (to) be by said Koch applied on the debts then existing against this complainant including a mortgage, then a lien on said lots;" that, on September 24,

1891, complainant delivered to Koch the possession of the realty and personalty; that, on September 26, 1891, Koch conveyed the lots to the New Athens Brewing Company; that, on September 30, 1891, complainant received the shares of stock amounting to $2000.00, and has applied $1000.00 thereof in payment of the personalty, and $1000.00 toward the payment of $13,000.00, the purchase price for the realty, leaving a remainder of $12,000.00 with interest; that, by the agreement, complainant's debts were to be paid forthwith by Koch; that such debts amounted to $12,000.00, and Koch had notice of the amount and who the creditors were, but neglected and refused to pay the creditors the several amounts due them; and that the Brewing Company had notice, before the conveyance to it, of the non-payment of the purchase money due from Koch.

The proof shows, that Probst was the president of the Brewing Company, Koch its manager, and Henry Dose, its secretary. These parties organized the corporation, and had full notice of the facts in regard to the consideration for the purchase of the property, and how much indebtedness was assumed, and how much, if any, had been paid when the property was transferred to the company; and it is not contended, that the corporation itself was not affected with such notice. If the purchaser of land knows, that his vendor is still owing a part of the purchase money, for which no security has been given, he will take the land subject to the implied lien of the original vendor. (*Harshbarger* v. *Foreman,* 81 Ill. 364; *Moshier, Admr.* v. *Meek,* 80 id. 79; 2 Warvelle on Vendors, pages 699, 700). Notice to the head officer or managing agent of a corporation may usually be regarded as notice to the corporation itself. (2 Morawetz on Priv. Corp. sec. 540 b.).

The proof also shows, that, when the deed and bill of sale were delivered, the debts amounted to about $12,000.00 without interest, including a mortgage of $5000.00 upon the lots. We understand from the evidence, that the mortgage still

rests upon the lots, and that its payment, whether originally assumed by Koch himself, or not, has been assumed by, and is a liability of, the Brewing company. This being so, of the $9000.00 of stock issued, (90 shares each at the face value of $100.00), the 20 shares of the face value of $2000.00 given to appellee, would be subject to their proportion of the burden of the incumbrance.

As to the indebtedness not represented by the mortgage, most of which had been reduced to judgment and was in the shape of liens upon the property, the testimony shows conclusively, that this has been discharged in full by Koch and Probst. But the amount paid to discharge it was only $4415.27. The creditors were settled with at less than the face of their claims. The theory of the appellee, and that, upon which the decree below was based, is, that the purchase money agreed to be paid for the property was $14,000.00, as named in the deed and bill of sale; that, after applying the $2000.00 of stock in the manner already stated, the remaining indebtedness was just $12,000.00, towit: $5000.00 due on the mortgage, and $7000.00 of other indebtedness; that the appellants paid $4415.27 and assumed $5000.00, making $9415.27; that the appellee was entitled to recover the difference between $12,000.00 and $9415.27, towit: $2584.73.

The testimony on behalf of the complainant tends to sustain his position, that a particular sum was agreed upon as the amount of indebtedness to be paid, over and above the amount of the mortgage. The testimony on behalf of appellants tends to show, that the agreement was to pay off and discharge the indebtedness whatever it was, whether more or less than a certain amount. As the Circuit Court has found in favor of the complainant upon this subject, and the Appellate Court has affirmed the finding, we are not disposed to disturb the conclusion reached by them upon the question of fact, particularly in view of the following considerations: *First,* the sums mentioned in the deed and bill of sale could

not have been agreed upon, on any other theory than that the total consideration was $2000.00 in stock, the assumption of the mortgage for $5000.00, and the payment of other indebtedness for $7000.00; *Second,* there is evidence to the effect that, when the deed was made to Koch, he had before him a statement of the debts and figured upon them; and the sum total of the various amounts due the different creditors, as such amounts are given in the record, is just about $7000.00 ; *Third,* when the corporation was formed, the stock was $9000.00, and, after taking out the $2000.00 turned over to appellee, there was $7000.00 left, which represented what Koch and Probst received for what they paid, over and above the mortgage.

The question then arises, whether appellants are liable to the appellee for the amount of the discount at which they settled the indebtedness agreed to be paid, or, in other words, whether they are liable to account to appellee for the difference between $7000.00 and $4415.27, towit: $2584.73.

The theory, upon which appellee claims that the amount of this discount is due to him as unpaid purchase money, is that Koch was his agent or trustee to apply the property transferred to him to the payment of appellee's creditors, and, therefore, could not speculate with reference to the liens and debts for his own benefit, nor make a profit which he was not bound to account for to appellee. Let us see what the facts are. Roth had failed to make a success of his brewery, and was in financial straits. He applied to Dose to borrow money for him, but did not obtain it, and then to get a partner for him, but none was found. It was then proposed to organize a stock company, "so that he would be relieved of his trouble." Dose saw Koch and Probst, and the three made the arrangement, by which a company was to be formed, the property of Roth was to be turned over to the company so formed, his debts were to be discharged, stock was to be issued to the amount of $9000.00, of which $2000.00 was to be given to

Roth, and he was to be furnished with employment by the company. The scheme seems to have been entered into by these parties primarily for the relief of Roth, and as a joint enterprise in which they were to be shareholders with him. The estimated value of the property turned over by him was $14,000, or $9000.00 over and above the mortgage. The stock received by appellee represented to him $2000.00 of this value, that is to say, he parted with property worth $2000.00 in exchange for his stock. But appellants did not pay full value for their stock. They received $7000.00 of stock, represented by $7000.00,in value of appellee's property, and yet paid only $4415.27 for it. Under the circumstances, we think that the relations, which appellants bore to appellee, were of such a nature as to forbid them to make this discount at his expense. They acted for him, and as his agents, in the matter of carrying out the arrangement for his relief.

In *Phelps* v. *Reeder*, 39 Ill. 172, where one of two tenants in common of land purchased his co-tenant's interest therein, and there were mechanics' liens upon the premises, which were to be paid off by the purchasing tenant by allowing a sale to take place under the anticipated decree and having him become the purchaser, and he was to be allowed, as a credit on the purchase money, one half of the full amount of those debts; it was held, that this agreement constituted the purchaser the agent of his vendor in respect to the payment of these liens; that, as such agent, he could not speculate in regard to the discharge of the liens at the expense of his principal; that, whatever abatement of the liens the agent may have procured, he would be required to allow it to his principal.

In *Hitchcock* v. *Watson*, 18 Ill. 289, we held that an agent or trustee for another cannot speculate in the execution of his fiduciary duties or employment; and if he, by compromise or otherwise, liquidates or pays off a debt of his principal, or *cestui que trust*, at less than he has received for that purpose, he is accountable for the residue.

We are, therefore, of the opinion, that the sum, decreed to be due to appellee, was so due to him.

*Third,* did a vendor's lien exist in favor of appellee for the difference between the amount of indebtedness agreed to be paid and the amount actually paid?

Counsel for appellants refer to a statement in Devlin on Deeds, (vol. 2, sec. 1256), in support of the proposition, that, if the obligation of the vendee of land be for the discharge of a liability to a third party, no lien is retained by the vendor when the conveyance is absolute; and that, in order to create a vendor's lien there must not only be a debt for unpaid purchase money to a fixed amount, but that such debt must be due directly to the vendor. The cases relied on in support of the proposition are *Patterson* v. *Edwards,* 29 Miss. 67; *Chapman* v. *Beardsley,* 31 Conn. 115; *Hiscock* v. *Norton,* 42 Mich. 320; *Sears* v. *Smith,* 2 id. 243; *Van Doren* v. *Todd,* 2 Green Ch. 397. In the Mississippi case the deed recited a consideration of $10,000.00 paid in cash, and "in consideration of said Edwards (the vendee) assuming to well and truly pay and satisfy the principal and interest, due upon" two certain notes due to the Planter's Bank, and payable February 26, 1840. The deed upon its face left the precise amount of the consideration unstated, and to be determined by reference to an outside matter. In the Connecticut case, also, the amount of the consideration was indefinite, it appearing that the vendee, to whom the conveyance was made, assumed the payment of "other claims together with the mortgage debt to the bank." In neither of the other cases referred to did the facts show an assumption of the debts of the vendor by the vendee. In *Sears* v. *Smith, supra,* the lien was held to have been waived, because the vendor accepted the note of a third person, either as security, or in absolute payment for the land. In *Van Doren* v. *Todd, supra,* it was held, that the lien was not waived, although the period of payment was dependent upon the life of another person, etc. In *Hiscock* v. *Norton,*

*supra*, the vendee agreed to build a house for the vendor, and other elements of an indefinite character entered into the consideration; and there was held to be no lien, because the sale was not for a specific sum, and it could not be ascertained with any certainty what the amount in money was, for which the lien was sought to be enforced. Other cases are referred to by counsel, where the vendee agreed to support the vendor during his life, and where the consideration was for personal services of an indefinite character, such as *Arlin* v. *Brown*, 44 N. H. 102; *Brawley* v. *Catron*, 8 Leigh, 522; *McCandlish* v. *Keen*, 13 Gratt. 615; *McKillip* v. *McKillip*, 8 Barb. 552. The rule, extracted from all these cases by Pomeroy in his work on Equity Jurisprudence, is thus stated by him, (vol. 3, sec. 1251): "The grantor's lien, wherever recognized, is only permitted as a security for the unpaid purchase price, and not for any other indebtedness or liability. There must be a certain, ascertained, absolute debt owing for the purchase price; the lien does not exist in behalf of any uncertain, contingent or unliquidated demand."

In the case at bar, the amount of indebtedness to be paid by the vendee was fixed at a specified sum, which went to make up the amount of the consideration named in the deed. Hence, there was no violation of the rule, laid down by the author above referred to, in the following words: "The vendor cannot claim a lien as security for an uncertain demand." (2 Devlin on Deeds, sec. 1256.) Of course, where the obligation of the vendee to discharge a definite amount of indebtedness owing by the vendor appears to be substituted for the purchase money, or to be taken instead of the purchase money, or as a direct security for it, the lien is lost. But we see nothing in the facts of the present case to indicate, that such was designed to be the object of the agreement to pay the vendor's debts. Upon principle, there can be no good reason why there should not be a lien for unpaid purchase money due the vendor, whether such money is to be paid into the

hands of the vendor himself, or into the hands of a creditor for his benefit. The obligation to pay the debts in such case is that of the vendee himself, and not the obligation of a third person, and, therefore, cannot be regarded as the taking of such outside security as will waive the lien. (2 Warvelle on Vendors, page 714; *Boynton* v. *Champlin,* 42 Ill. 57; *Sears* v. *Smith, supra; Lehndorf* v. *Cope,* 122 Ill. 317.) "Generally speaking, the lien of the vendor exists; and the burden of proof is on the purchaser to establish that, in the particular case, it has been intentionally displaced, or waived by the consent of the parties." (2 Story's Eq. Jur. sec. 1224.) The vendor's lien is based upon the theory, that a vendee ought not to hold the land of another and not pay for it; and the rule, that equity looks to substance and not form, is applicable in the enforcement of vendor's liens. (*Beal* v. *Harrington,* 116 Ill. 113; 2 Warvelle on Vendors, 707.)

It has been held, that, where there is an exchange of lands, a covenant by one of the parties to pay off the liens on the land transferred by him, as part of the consideration of the land deeded to him, is as much an agreement to pay a part of the purchase money, as though there had been an agreement to pay that amount directly to the vendor to enable him to pay off the liens. If the agreement is not kept, so much of the consideration fails, and a vendor's lien exists for the amount paid to clear off the liens. (*Elliott* v. *Plattor,* 43 Ohio St. 198; *Pratt* v. *Eaton,* 65 Mo. 157; *Bennett* v. *Shipley,* 82 id. 448; *D., X & B. R. R. Co.* v. *Lewton,* 20 Ohio St. 401; 2 Warvelle on Vendors, 707.) In *Mackreth* v. *Symmons,* 15 Ves. 329, Lord Eldon decided in favor of the lien as to the debt assumed by the purchaser but which he failed to pay, while he refused to extend it to the annuities. (2 Sugden on Vendors, page 679, sec. 19.) The question, whether the vendor is entitled to a lien, where the vendee fails to pay debts due by the vendor which he has agreed to assume as part of the

purchase money, was only incidentally referred to in *Manning* v. *Frazier,* 96 Ill. 279; and was not directly involved in *Doolittle* v. *Jenkins,* 55 Ill. 400.

Counsel for appellant makes the point, that personalty as well as realty entered into the consideration for the sale, and that there can be no vendor's lien for a sale of personalty. Where land and personal property are sold together, under one contract, at a gross price, without stating the separate price or value of the land and personalty, so that it cannot be determined what part of the gross price is for the one and what part is for the other, there will be a waiver of the vendor's lien, as it will be presumed that the vendor intended to rely upon the personal responsibility of the vendee. (*Stringpellows* v. *Ivie,* 73 Ala. 209 ; *Wilkinson* v. *Palmer,* 82 id. 367 ; *McCandlish* v. *Keen, supra; Young* v. *Harris,* 36 Ark. 162). But no such state of things exists in this case. A price or value was fixed upon the personalty separate from that fixed upon the realty, the price of the one being $1000.00 as stated in the bill of sale, and of the other being $13,000.00 as stated in the deed. As to the payment of the $2000.00 in stock, the vendor had the right to apply one half of it in payment for the personalty, in the absence of any direction by the vendee to make a different application. The debtor is entitled to elect on which debt the payment shall be credited, and it is the duty of the creditor to so apply it. This election, however, should be made at the time the payment is made. Where the debtor pays generally, or fails to make the application when he might do so, the creditor may apply the payment to whatever debt he pleases, unless there are circumstances which would render the exercise of such discretion by him unreasonable, and unjust to the debtor. If no application is made by either party, the court will make it according to the justice and equity of the case. (*McCurdy* v. *Middleton,* 82 Ala. 131 ; *Arnold* v. *Johnson,* 1 Scam. 196 ; *Alexandria* v. *Patten,* 4 Cranch, 316 ; *U. S.* v. *Kirkpatrick,* 9 Wheat. 720.) We

see nothing in the circumstances of this case to indicate, that the application as made was not reasonable and just.

We think that the decree of the Circuit Court was correct in awarding a lien in favor of appellee. The decree of that court, and the judgment of the Appellate Court, are affirmed.

*Judgment affirmed.*