**Joseph King and Emma F. King, Appellants, v. Uriah T. S. Rice, Trustee. William E. Harpster et al., Appellees.**

EQUITY, § 146*—*when bill is multifarious.* Where a bill alleged a sale of certain lands, part of a larger tract, by complainants to one defendant who was to pay the purchase price therefor upon a mortgage for a larger amount then existing upon the entire tract, and supposed to be held by another defendant to whom such purchase price was paid and who executed and filed a release of the mortgage as to the lands sold, leaving the remaining lands only subject to the mortgage, and also the execution by complainants of a new note and mortgage upon the remaining lands to include the supposed remaining indebtedness secured by the original mortgage and an additional loan, the old mortgage to be released and the new one filed to replace it, and alleged further that the old mortgage had never been released and was held by another of the defendants, together with the new mortgage, without any credit thereon for the payment made by the purchaser of the small tract, *held* that the bill was multifarious, as it included two distinct transactions requiring separate decrees and separate defenses.

Appeal from the Circuit Court of Moultrie county; the Hon. GEORGE A. SENTEL, Judge, presiding. Heard in this court at the April term, 1917. Affirmed. Opinion filed October 11, 1917.

HENLEY & DOUGLAS and E. J. MILLER, for appellants.

F. M. HARBAUGH, for appellee William E. Harpster.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

This is an appeal from a decree entered in the Circuit Court of Moultrie county sustaining a demurrer to the amended bill, of complainant and dismissing the same for want of equity.

The bill was filed by Joseph King and Emma F. King, his wife, and it is averred therein that Joseph King on December 9, 1912, was the owner of a certain tract of land containing 65 acres; that on January 17, 1909, they executed a mortgage or trust deed thereon to secure a loan for $2,500, evidenced by a note for said amount, payable to the order of themselves at the office of said Rice, bearing interest at the rate of 6 per cent. per annum, the principal payable January 1, 1914, and the interest payable semiannually, secured by 10 interest notes; that on December 1, 1912, complainants contracted to sell 16 acres of said land to one William Harpster and on December 9, 1912, executed and delivered to said Harpster a warranty deed therefor; that the price agreed upon for said conveyance was $2,000, which Harpster agreed to pay to King by paying the same on the aforesaid mortgage or trust deed, thus reducing said mortgage indebtedness to $500; that Harpster filed said deed for record and went into possession of the lands and has remained in possession thereof from thence hitherto, claiming to own the same by virtue of said conveyance; that Harpster attempted to comply with his undertaking in regard to paying the said $2,000, and went to the office of said Rice and paid to the latter the said sum of $2,000, on or about December 17, 1912, and thereupon Rice executed and delivered to Harpster a partial release of said trust deed, the said release purporting to release the said 26 acres of land from the lien of said trust deed and purporting to leave said trust deed on the remaining 39 acres, owned by King, which said partial release was filed for record; that on December 9, 1912, com-

plainants went to Rice and arranged to borrow an additional $400 from him and arranged also to pay the remaining $500 of the $2,500 note and mortgage, on which said Harpster had claimed he had paid $2,000 and thus release in full said $2,500 mortgage or trust deed; that Rice consented to make said loan of $400 and release in full said $2,500 mortgage or trust deed so as to remove the lien thereof from the 39 acres owned by King, being the remainder of his land which had not been conveyed to said Harpster; and to accomplish this they arranged with Rice to execute a new note and mortgage for $900, securing the same by giving a new mortgage on said 39 acres of land, and that they executed said note for $900 and the mortgage securing the same; that $500 of the consideration mentioned in said $900 mortgage and note represents the remaining $500 of the consideration in said $2,500 mortgage, so that said two mortgages, so far as $500 of the consideration in each is concerned, represent one and the same debt; that when they executed the $900 note and mortgage, Rice promised and agreed to release in full said $2,500 mortgage and trust deed and they, relying on said promise, gave said second mortgage as aforesaid; that thereafter they never received any notice to pay any interest on the $2,500 note and mortgage which they believed had been released and paid in full; that in the month of July, 1913, they learned that said $2,500 mortgage had not been released and that Rice was insolvent and did not have said $2,500 note and mortgage in his possession at the time complainants gave him said $900 note and mortgage, and that Rice had not released said $2,500 note and mortgage and was not the owner nor the agent of the owner nor in possession of said note or mortgage when Harpster paid him the said $2,000; that since the financial failure of Rice they have been informed that the State National Bank of Mattoon has in its possession said $2,500 note and mortgage, and claims to be an inno-

cent purchaser thereof for value prior to the time Harpster paid said $2,000 thereon, and said bank claims the full lien of said $2,500 note and mortgage; and said bank also claims to be the owner and holder of said $900 note and mortgage and claims the benefit of the full amount of said $900 lien thereunder against said 39 acres of land, thus claiming a double lien for the same debt; that one Miller claims to have some interest in said $2,500 trust deed and note; that said bank claims that Rice had no authority to make said partial release of said $2,500 mortgage or trust deed and that the same is null and void; that Rice has been adjudged an involuntary bankrupt, and one Powell has been appointed trustee of his estate; that if it be a fact that Rice was without authority to execute said partial release and receive said $2,000 from Harpster, then complainant King has never received the purchase price for the 26 acres of land conveyed to Harpster, and that the latter owes him $2,000, the price therefor with lawful interest thereon from the date of said deed; that said Harpster has since incumbered said 26 acres of land by placing a mortgage thereon to secure the sum of $2,480; that the court should find that the $2,500 note and mortgage or trust deed is paid in full and that the same is a cloud upon the title of complainants to said 39 acres of land, and the same should be released, canceled and removed; that said tract of land should be cleared of all incumbrances except the $900 mortgage aforesaid, and that all of the other pretended liens and claims of the defendant are but clouds upon the title of complainants; that all of these matters and controversies were occasioned by the payment by said Harpster of the purchase price of the land so purchased by him from complainants, to the said Rice as aforesaid, and that all the matters alleged constitute one and the same subject-matter, being occasioned as aforesaid; that both mortgages are long past due and the bank is threatening to foreclose them, thus incur-

ring large sums in costs against complainants by such foreclosure suit; that said Harpster has refused to obtain a credit of $2,000 on said $2,500 note and mortgage or trust deed from the bank, from Miller, from Rice, or his trustee in bankruptcy, or from any other source, although he agreed to pay said $2,000 on said mortgage at the time of said transaction above named; that not having paid said $2,000 as aforesaid and complainant King not having received any credit for said $2,000, it became and was the duty of said Harpster to pay complainant King said $2,000 in cash in lieu of paying the same on said mortgage indebtedness, which he has failed to do, but the said Harpster refuses to pay to complainant King said $2,000 or any other sum and has refused to remove any of said clouds or liens or reduce said mortgage indebtedness on complainant's land; that he permits said $2,500 trust deed or mortgage to remain a lien thereon for its full face value contrary to his agreement with complainant, who is entirely without remedy in the premises to compel the said Harpster to secure credit for said $2,000 on said $2,500 mortgage or trust deed; that the acts of said Harpster and of the other defendants have resulted in a cloud being left on complainant's land for $2,500, the same being the trust deed or mortgage for said amount, and complainants will necessarily be involved in a large number of suits and litigations and in a multiplicity of suits on account of said transactions, as well as suffer irreparable loss and injury, unless they are permitted to maintain this bill against all the parties connected with said transaction so as to get the rights of all the parties therein adjusted, so far as pertains to the title to said 39 acres of land.

The demurrer was sustained to the bill on the ground that it was multifarious. It is apparent upon the face of the bill that it involves two complete and different transactions: First, the sale of the 26 acres to Harpster for the sum of $2,000, which the latter agreed to

pay upon the indebtedness evidenced by the trust deed and note for $2,500; second, the transaction between the complainants and Rice wherein the new loan for $900 and the mortgage securing the same were involved. Harpster had nothing to do with this last transaction between complainants and Rice. He is not concerned in it in any way. His only obligation to complainants is to pay the $2,000 for the purchase price of the land purchased by him from them in accordance with his agreement. Complainants have a distinct remedy against Harpster and a distinct remedy against Rice. If the allegations in the bill are true that Harpster, in consideration for the conveyance to him of the tract of land mentioned, agreed to pay the purchase price of $2,000 therefor on the indebtedness of complainants, evidenced by the $2,500 note and trust deed, and has failed to do so, so that complainants have failed to receive credit for the same on said indebtedness, then the remedy of complainants against Harpster is by a bill to foreclose their vendor's lien on the land conveyed for the purchase price thereof. *Koch v. Roth*, 150 Ill. 212; *Croft v. Perkins*, 174 Ill. 627; *Blomstrom v. Dux*, 175 Ill. 435; *Lewis v. Shearer*, 189 Ill. 184. By their subsequent transaction with Rice they stand to lose $500 by being compelled to pay that sum twice, that amount of the same indebtedness being embraced in both the $2,500 note and trust deed and the $900 note and mortgage. Their remedy against Rice is by an appropriate action based upon the fraud alleged.

The bill cannot be sustained upon the theory that it is brought to remove a cloud from the title to the land nor upon the theory that it is necessary to save a multiplicity of suits. The grievances complained of are too remote and distinct from each other. They are independent and would require separate decrees and separate defenses. *First Nat. Bank of Lincoln v. Starkey,* 268 Ill. 22.

The bill is multifarious and subject to demurrer on that ground, and the decree of the Circuit Court must therefore be affirmed.

*Affirmed.*