## Dorris Lumber Company, Appellant, v. James Cummins et al., Appellees.

1. DEBTOR AND CREDITOR—*application of payments.* "It is not necessary that the appropriation of the payment should be made by an express declaration of the debtor; for if his intention and purpose can be clearly gathered from the circumstances of the case, the creditor is bound by it."

2. DEBTOR AND CREDITOR—*application of payments.* If there are circumstances which would render it unreasonable or unjust to the debtor to permit the creditor to apply the payment to whatever debt he pleases, the court will not permit it to be done.

Mechanics lien. Appeal from the Circuit Court of Saline county; the Hon. W. W. DUNCAN, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed August 5, 1910.

J. B. LEWIS and W. F. SCOTT, for appellant.

WHITLEY & SOMERS, for appellees.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

In the summer of 1907, Josephine Cummins, as it appears

from the proofs in this case, entered into a contract with appellee, W. M. Lane, by which the latter was to furnish the material and erect a house on premises owned by her in Saline county, Illinois. The price agreed upon was $1,625 which was to be paid as the work progressed. In pursuance of the contract Lane arranged with the Dorris Lumber Company, appellant, to furnish the material. Appellant's bill for material so furnished, amounted to $878.98, upon which there was an agreed credit for money paid and material returned, of $219.56, leaving a balance claimed by appellant to be due, of 659.42. Of this amount $259.42 is admitted by appellees to be due, but it is claimed by them that the account should have been credited with the proceeds of a check for $400 given by Lane to Hugh Dorris, the manager of appellant, on July 16, 1907. Appellant, on December 21, 1907, served notice of its claim for lien and afterwards filed its petition in this suit against James Cummins and Josephine Cummins, to foreclose its lien as a subcontractor. Later an amended petition was filed which stated among other things, that Josephine Cummins had died since the commencement of the suit, but that before her death she had conveyed said real estate to her husband, said James Cummins, and making W. M. Lane a defendant to the petition.

James Cummins made a tender of the amount of $259.42, which he admitted to be due, and the only question between said James Cummins and appellant in the court below, was whether or not the proceeds of the check for $400 above mentioned, should have been credited to the Cummins account. That court found that Cummins was entitled to the credit claimed by him and the correctness of such finding is challenged by appellant on appeal to this court. Lane, who is a contractor and builder, appears to have had a number of building contracts on hand at the same time. He was buying building material used in these contracts from appellant and a separate account was kept with him, for the material furnished, upon each job, so that money paid and material returned, could be properly credited. The $400 in question when paid by Lane to appellant's manager, was not credited

upon the account of Cummins but was distributed among certain other of the accounts which Lane was running with appellant.

It clearly appears from the evidence that Lane was enabled to make the payment in question to appellant, by reason of the fact that Cummins had just paid him $500 on his contract, but appellant claims the right to distribute the payment among the other accounts of Lane upon the ground that the latter, when he made the payment, gave no directions as to its application. The testimony on the part of appellees is to the effect, that on July 16, 1907, Cummins met Dorris, who asked concerning Lane's financial affairs and the payment of money to him; that Cummins said he was going to pay Lane $500, as the latter wanted some money to pay appellant and finish paying the hands at work on the building; that shortly afterwards Cummins met Lane, went with him to the bank and gave him a check for $500; that when they came out they met Hugh Dorris, and Lane and Dorris went back into the bank together; that about a week afterwards Cummins again met Dorris and asked him how much Lane paid him and he said $400; that Cummins then said "How much does that make on my lumber bill?" and Dorris replied, "Don't know, I turned it over to the bookkeeper;" that Lane had told Dorris he would get some money from Cummins and give it to him and when they were together in the bank, Lane told him that Cummins had paid him some and gave him $400. Dorris admitted getting the $400 check from Lane, but denied that he received it at the time and place claimed by appellees and stated that, at the time he received it, no direction was given him whatever by Lane as to the application to be made of it; Dorris also testified that he told Cummins when the latter spoke to him about the $400 or $500 payment he had made to Lane, "that if he had not got all the credits he had made he would get them." The money paid was turned over to Caskins the bookkeeper who appears to have, for some reason, credited two other accounts than that of Cummins. He testified, however, when he found that any one had paid money on

any of these Lane contracts, he would credit the account of the man who paid the money as soon as he found who did the paying; that it was his intention to give the man credit for all he had paid and all he returned, and that he gave such credits as soon as he learned of the payment of the money or the return of the material. The injustice of allowing appellant to take this money paid by Cummins and appropriate it to the payment of other debts due it from Lane, when the evidence unquestionably shows that it must have been understood by all parties concerned that the payment was made by Lane on the Cummins account, is so evident that such application should not be permitted to stand as against Cummins, unless there is some inflexible rule of law which requires the court to sustain the application so made. There is, however, no such rule of law requiring the court to disregard the evident understanding of all the parties concerned in the transaction.

In 2 Parsons on Contracts (5th Ed.) 630 the rule is laid down that "it is not necessary that the appropriation of the payment should be made by an express declaration of the debtor; for if his intention and purpose can be clearly gathered from the circumstances of the case, the creditor is bound by it." In this case the circumstances plainly show that it was the intention and the purpose of Lane that the money should be paid upon the Cummins contract.

In Koch v. Roth, 150 Ill. 212, it is said: "Where the debtor pays generally or fails to make the application when he might do so, the creditor may apply the payment to whatever debt he pleases, unless there are circumstances which would render the exercise of such discretion by him, unreasonable and unjust to the debtor." It thus appears that if there are circumstances which would render it unreasonable or unjust to the debtor, to permit the creditor to apply the payment to whatever debt he pleases, the court will not permit it to be done. This rule applies with peculiar force here where the real party whose interests are to be injuriously affected by the application made of the fund, is a third person, who made the payment under circumstances which show

·he had a right to expect that the amount paid by the build-
er to the material men out of the check given by him, would
go to liquidate the bill for lumber used on his contract. The
court below properly entered a decree which gave appellee
Cummins credit for the $400 paid by him and the same
will be affirmed.

*Affirmed.*