HESNARD, Appellant, v. LARIVE, et al., Respondents.

(184 N. W. 972.)

(File No. 4739.  Opinion filed November 4, 1921.)

1.  **Payment—Installment Notes, Misapplication of Payments Re— Statute as Inapplicable to Undue Debts—Debtor's Intent Re Application, Evidenced How.**

Sec. 757, Code 1919, in part providing (1) that if at time of performance, debtor's intention or desire that it be applied to extinction of any particular obligation, be manifested to creditor, it must be so applied, (2) that if no such application be made, creditor within reasonable time may apply it toward extinction of any obligation, performance of which was due him,—prescribes, as to case at bar, the law as to application of payments; and held, that it is at least doubtful whether Subd. 2 of said section applies to payments made on undue debts; that it does not apply where debtor has manifested intent or desire as to application of payments. Such manifestation may be made at any time prior to payment, and may be evidenced by any fact or facts showing same.

2.  **Foreclosure—Payments—Foreclosure of Chattel Mortgage, Concurrent Realty Mortgage—Alleged Default Re Installment Note Mis-application of Payments—Non-default Showed.**

Where a chattel mortgage and a realty mortgage were given to secure installment notes falling due during a series of years and evidencing the purchase money of certain personal property and certain realty, the chattel mortgage providing that moneys recived from sales which mortgagors might make of certain mortgaged livestock should be applied on the principal indebtedness, and mortgagee seeking foreclosure of the chattel mortgage alleged default in payment of the first note, in not keeping insurance up on the mortgaged realty and in payment of certain taxes thereon; the realty mortgage authorizing mortgagee, in case of such default, to declare the whole indebtedness due, all interest on the mortgage debt having been paid

save one installment due shortly before mortgagee's replevin
suit brought for possssion of the personalty preliminary to
foreclosure; a portion of certain payments having without con-
sent of mortgagors been applied to the principal of the note
maturing latest in the series, another portion having without
such consent been applied to the principal of the earliest matur-
ing note and before interest thereon was paid, which left sa.d
note apparently in default when suit was brought; held, that,
a series of notes evidencing but one debt payable in installments,
the evident intent of the parties was that they should be paid
in order of dates of maturity; that Court will not disregard
such evident understanding of the parties when circumstances
render it unreasonable or unjust to debtor to permit creditor
to apply payment to whatever debt he pleases; therefore held,
that mortgagors were never in default in payment of the mort-
gage debt.

3.  Same—Insurance on Personalty, Mortgagee to Maintain, Subse-
    quent Renewal by Mortgagors Without Mortgagee Clause, Ef-
    fect Re Right to Foreclose—Mortgagee's Lien on Fire Policy.
        Where under a mortgage of realty securing payment of a
    certain note, certain personalty mortgaged to secure the same
    purchase money debt was required to be kept insured for bene-
    fit of mortgagee, the latter agreeing however to allow an exist-
    ing policy to run, the insurer thereafter requiring a new policy
    because of change of ownership of personalty; mortgagee there-
    upon taking out a new policy and paying upon the substitution
    a balance of 80c as earned premium on the old policy, mort-
    gagors on expiration of said policy having renewed same, and
    thereafter taking out new insurance but without having in-
    serted in the policy the ordinary clause for payment of loss to
    mortgagee, held, that failure to have said clause inserted did
    not amount to a default under either mortgage, since without
    such clause mortgagee under provisions of the mortgage would
    have an equitable lien on the policy and its proceeds.

4.  Same—Mortgage Provision Re Taxes—Mortgagors' Failure to
    Pay All Taxes Through Treasurer's Oversight, Mortgagee's
    Payment of Same, Effect Re Right to Foreclose—Effect Re
    Insecurity Clause—Subsequent Increase of Value of Property,
    Effect.
        Where mortgagors of realty applied to county treasurer for
    statement of amount of taxes due on the mortgaged property,
    said officer having by inadvertence made out an incomplete
    list of same, whereupon mortgagors paid taxes on the listed
    property as well as on some other of mortgagee's property in
    list; and mortgagee afterwards paid the taxes so left unpaid
    by mortgagors, the latter however remaining in ignorance of
    their failure to pay same until suit was instituted; mortgagee
    having subsequently to his payment of same received from

mortgagors a payment from which he might have reimbursed himself for said taxes as well as 80c insurance money paid by him in substituting a new insurance policy after mortgages were given; **held**, that mortgagee had no reason to deem himself insecure by reason of mortgagors' failure to pay said taxes or to reimburse him for said 80c, he having failed to notify them as to the latter. So **held**, it appearing that the mortgaged property was of substantially greater value when foreclosure was begun than when mortgages were given.

5.   **Same—Mortgagee's Said Payment of Taxes, and Insurance Premium Re Change of Policy, Failure to Notify Mortgagors of Disbursements, as Waiver—Effect Re Foreclosure.**

Said mortgagors, having as far as they were aware, complied in full with provisions of notes and mortgages, and mortgagee's only claim to right to exercise his option to declare the debt due being because of failures to pay said insurance premium and said taxes inadvertently omitted by mortgagors, and mortgagee having failed to advise mortgagors of said alleged defaults, and never exercised his claimed option to declare the whole debt due until several months after he received from mortgagors moneys he might have applied to cover said disbursements, he thereby waived any right to declare the debt due and to f reclose.

McCoy, J., not sitting.

Appeal from Circuit Court, Fall River County. Hon. Levi McGee, Judge.

Action by Frank P. Hesnard, against George E. and Ida Larive, in claim and delivery of mortgaged personalty, as preliminary to foreclosure under chattel and realty mortgages. From a judgment for Defendants, and from an order denying a new trial, Plaintiffs appeal. Affirmed.

*Martin & Mason,* for Appellant.

*Robert C. Hayes,* and *John T. Heffron,* for Respondents.

(1)   To point one of the opinion, Appellant cited: Fargo v. Jennings, 8 S. D. 99.

Respondent relied on said citation; and cited also: Paxton & Gallagher Co. v. Starkweather (S. D.) 128 N. W. 479.

(2)   To point two, Appellant cited: Green v. Frick, 25 S. D. 342; Stanclift v. Norton, 11 Kas. 218.

(5)   Under point five, re waiver, Respondent cited: 1 Wiltsie on Mortgage Foreclosure, Par. 60; Jones on Mortgages, 2nd Ed. 1186.

WHITIN[G, J.    Plaintiff, as the mortgagee under a chattel mortgage, brought this action seeking to replevin the personal property described in said mortgage, which property was in possession of the defendants, the mortgagors.    Plaintiff based his claim of right to possession upon an allegation that defendants had defaulted in certain covenants contained in the mortgage, and upon an allegation that he deems himself "insecure"—there being a provision in said mortgage giving a right of foreclosure if the mortgagee "shall at any time deem himself insecure."    Defendants, answering, denied all the grounds upon which plaintiff's claim of possession rests.    Trial was had before the court without a jury.    Findings and conclusions were entered in favor of defendants.    From a judgment thereon and from an order denying a new trial, this appeal was taken.

The sole question for our determination is whether the evidence sustained sufficient of the findings of the trial court so that its conclusions and judgment should stand; this resolves itself to the one question, Was plaintiff, under the evidence, entitled to foreclose his mortgage?

It appears that plaintiff sold defendants a large amount of live stock and farm machinery, certain real estate and personal property used in an ice business at Hot Springs, S. D., and numerous tracts of real property situated in Fall River county, and took from defendants, in payment therefor, 9 notes for $2,000 each and 1 note for $16,250.    The $2,000 notes were due one on or before the 1st day of January of each year commencing with the year 1918 and ending with the year 1926, and the $16,250 note was due on or before January 1, 1927.    To secure these notes, a chattel mortgage was given covering the personal property purchased, and a real estate mortgage covering the land purchased, as well as a farm then owned by defendants.    The chattel mortgage had a clause therein authorizing the defendants to sell any of the live stock therein described, "providing the moneys received from such sales are turned over to the mortgagee to be applied on the principal of the indebtedness."    Appellant claims default by respondents in three respects:    In failure to pay the first $2,000 note in full when it became due; in failure to keep the buildings upon the mortgaged real estate insured for the benefit of the mortgagee as agreed in the real estate mortgage;

and in failure to pay certain of the taxes as they became due on the real estate. The chattel mortgage contained no provision whereby default in the payment of taxes or in keeping the buildings insured. for benefit of mortgagee should give the mortgagee a right to foreclose the chattel mortgage; but the real estate mortgage provided that, in case of such failure to pay taxes or to keep property insured, the mortgagee might declare the whole indebtedness due. It is because of such provision that appellant contends that he had the right, at the time this action was brought, to foreclose the mortgage, and therefore the right to the possession of this property for the purpose of such foreclosure.

These facts are undisputed. This action was brought in August, 1918. All interest due on the mortgage indebtedness had been paid up to and including that due July 1, 1918. The mortgagors had sold some of the mortgaged stock at different times during 1917, and had applied the money received for same to this mortgage indebtedness. Four portions of this money, aggregating $1,075, had been applied upon the principal of the note to become due on January 1, 1918. In September and November, 1917, other stock was sold, and the proceeds thereof, $675 and $942.09, were turned over to the mortgagee, who, without the knowledge or consent of the mortgagors, applied same to the principal of the $16,250 note, which would not become due until more than eight years from the time of such payments. In June, 1918, the mortgagors made a payment of $325, which the mortgagee, without the consent of the mortgagors, applied upon the principal of the first note. No other payments having been applied on the first note, due January 1, 1918, there was apparently a default in the payment of such note when this action was brought. Appellant contends that, in the absence of any directions by the mortgagors, he had a right to apply the two payments on the large note.

[1] The law as to application of payments is prescribed by section 757, R. C. 1919. Appellant contends that the respondents manifested no intent or desire as to the application of the payments which appellant applied to the large note, and that, under subdivision 2 of such section, he had the right to apply such payments to such note as he chose. It is at least doubtful whether this subdivision of such section has any application to payments

made where debts are not due; and certainly it has no application where the debtor has manifested his intent or desire as to application of payments. Such manifestation of intent or desire may be made at any time prior to payment, and may be evidenced by any fact or facts showing same. 2 Parsons on Contracts (5th Ed.) 630. That it was the intent of all parties to this transaction that this indebtedness should be paid in the order evidenced by dates of maturity of notes is clear. These notes evidenced but one debt, which the parties contracted that the mortgagors should be obligated to pay in installments, and these installments in a certain order as evidenced by the due dates of the several notes. They contracted that the mortgagors might sell off the live stock and apply the proceeds to the principal of the indebtedness. It is unreasonable to suppose that they intended application of the proceeds of this property in any other order than as evidenced by the notes. The clear intent, as evidenced by the notes and mortgage, was carried out in the application of the first four payments made. As said in Dorris v. Cummins, 157 Ill. App. 10:

"There is * * * no * * * rule of law requiring the court to disregard the evident understanding of all the parties concerned in the transaction," and "if there are circumstances which would render it unreasonable or unjust to the debtor to permit the creditor to apply the payment to whatever debt he pleases, the court will not permit it to be done."

[2] If appellant was right, and respondents had sold off all the personal property and turned it over to appellant in one lump sum without specific directions as to its application, appellant could have applied the whole thereof to the note that would not be due for eight years, and then, if there was any money remaining, applied it to the $2,000 notes in the reverse order of their maturity, and still have been in a position to have claimed a default on the first note unless the whole debt was paid. A contention that might, under the facts of this case, lead to such results, is monstrous. The mortgagors were never in default in the payment of the debt evidenced by the notes.

[3] There was evidence that warranted the trial court in finding that, at the time appellant sold the property to defendants, the real property sold was insured in the sum of $2,000, the amount of insurance which respondents, in the real estate mort-

gage, agreed to keep upon the property for the benefit of appellant; that appellant agreed to leave that insurance running; that the insurance company, through its agent, insisted that a new policy be taken out because of the change in ownership; that appellant took out a new policy, surrendering the old policy and paying upon the substitution of the new policy a balance of 80 cents, the amount of the earned premium on the old policy; that, when this insurance ran out, the mortgagors renewed the same; that, afterwards, they canceled this insurance, taking out insurance in a larger amount upon this property, but neglecting to have attached to the policy the ordinary clause providing that loss, if any, should be paid to the mortgagee. Appellant contends that he has a right to foreclose because respondents have not repaid him the amount of the first policy that he took out after the property was transferred to defendants; and because of the last policy did not provide for payment to him as his mortgage interest might appear. As above noted, there was evidence warranting the court to find that it was agreed that the policy on the property at the time of the sale should remain in existence. Therefore appellant could only claim to be entitled to be reimbursed the 80 cents; and it appears that he never made any claim for such 80 cents, or notified the defendants in relation thereto, until the bringing of this action. There is no merit in appellant's contention based on the fact that the last policy did not have the usual mortgage clause attached. Without such mortgage clause, the mortgagee would still, because of the provisions in the mortgage, have an equitable lien on the policy and its proceeds. 27 Cyc. 1263.

[4] It appears that, when the time arrived for payment of taxes, respondents went to the treasurer's office and sought to pay all the taxes due upon the property that was covered by appellant's real estate mortgages; that the treasurer, knowing that the property for which respondents desired to pay the taxes was the property formerly belonging to appellant, made out what he supposed was a complete list of such property, and respondents paid the taxes thereon as well as on the real property not purchased of appellant; that the treasurer overlooked certain of the property that had been sold to the respondents; that, as a result, respondents, though they were seeking in good faith to pay all of these taxes, did in fact omit to pay the taxes on some two or

three tracts of land; that appellant, noticing that such tracts were advertised for sale, did himself go to the treasurer's office and pay the same, paying thereon, in all, $26.62; that appellant never called respondents' attention to the fact that they had failed to pay some of the taxes; that respondents remained in absolute ignorance that they had failed to pay all of the taxes, until this action was instituted; that the real estate mortgages provided that, if taxes were not paid, appellant might pay the same, and the amount paid would be added to the mortgage indebtedness; that after appellant paid out this $26.62 he recived from respondents a payment of $325, from which he might have reimbursed himself for this $26.62 as well as the 80 cents insurance money, as there was then no principal due on any of the notes.

Did appellant have any reason whatsoever to deem himself insecure? It appears, by appellant's complaint, that the value of the property he sought to replevin was, at the time this suit was brought, in excess of the selling price for which he sold, not only the property described in the chattel mortgage, but in excess of the selling price of all the property, real and personal, which he sold to respondents. The evidence supported a finding made by the trial court to the effect that, at the time of this action, at which time all interest due had been paid and some $3,000 had been paid upon the principal indebtedness, the mortgage security had increased in value very materially over the value thereof at the time the mortgages were given. Appellant showed nothing to support his claim that he deemed himself insecure.

[5] In view of the above facts, we agree with respondents' attorneys that, "The mortgagee has shown no decent reason, either in law or morals, for this action." Certainly no grounds existed under which he would have a right to foreclose this mortgage, thus causing, as it undoubtedly would, great loss to respondents. To summarize: Respondents had, so far as they were aware, lived up fully to the provisions of the notes and mortgages. The only grounds upon which appellant could possibly claim a right to exercise his option to declare the indebtedness due was because of failures to pay 80 cents insurance premium and $26.62 taxes. These failures occurred several months prior to the bringing of this action. Respondents had never been advised, prior to the bringing of this action, of such alleged de-

faults.   Appellant never expressed any election to exercise his claimed option to declare the whole debt due until several months after he had received from respondents money which he might have applied to the payment of such $27.42.   By failure to exercise his option until several months after he had received such money, he waived any right to declare the whole debt due and to foreclose his mortgage because of such failures on the part of respondents.

The judgment and order appealed from are affirmed.

McCOY, J., not sitting.