In re Delvin Harold JACOBSON, fdba Big Boys Toys,

**and**

Clarice Mae Jacobson, Debtors.

Delvin Harold JACOBSON and Clarice Mae Jacobson, Plaintiffs,

v.

UNITED NATIONAL BANK, Defendant.

Bankruptcy No. 579–00112(C).

Adversary No. 580–0001.

United States Bankruptcy Court, South Dakota.

July 21, 1980.

Robert M. Nash, Rapid City, S. D., for plaintiffs.

Richard E. Huffman, III, Rapid City, S. D., for defendant.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

Delvin Harold Jacobson and Clarice Mae Jacobson filed a Chapter 7 Petition and Schedules on November 27, 1979. On February 22, 1980, Debtors filed a Complaint requesting the Court to: (1) determine any and all amounts due to United National Bank, hereinafter referred to as Creditor; and (2) to order the Trustee to apply any proceeds from Debtors' Estate first to the loan secured by Creditor's residential realty second mortgage on the homestead of Debtors.

Creditor filed an Answer and Counterclaim on March 10, 1980. In the Answer Creditor denied all allegations made by Debtors. Creditor's Counterclaim alleged that on September 8, 1977, as security for a Promissory Note in the amount of $8,045.10, that Debtors granted Creditor a second mortgage in real estate now claimed as Debtors' homestead. Creditor further alleged that nothing had been paid on the note and that the value of the property exceeded the mortgage. Creditor requested the Court to order the Trustee to apply proceeds from the sale held prior to the bankruptcy to the note Creditor selects and to allow Creditor to foreclose on the property.

## FACTS

On March 10, 1980, Creditor filed a Proof of Claim. Paragraph 2 sets out that Debtors owe Creditor a total of $18,196.02 on three different notes, which are as follows:

"A. On Loan No. 2167 Three Thousand Four Hundred Ninety-Three Dollars and Sixty-Five Cents ($3,493.65) principal plus accrued interest through November 27, 1979 of Three Hundred Fifty-Eight Dollars and Eighty-Six Cents ($358.86);

B. On Loan No. 213–401 principal of Four Thousand Fifty-Eight Dollars and Seventy-One Cents ($4,058.71) plus accrued interest to November 27, 1979 of Four Hundred Eighty-Eight Dollars and Forty-Six Cents ($488.46); and

C. On Loan No. 211–344 (This Court would note that Loan No. 211–334 is attached. The Court will presume that the difference in numbers occurred as a result of a typographical error.) Eight Thousand Fifteen Dollars and Sixteen Cents ($8,015.16) of principal plus accrued interest through November 27, 1979 of One Thousand Seven Hundred Eighty-One Dollars and Sixteen Cents ($1,781.16)."

Paragraph Three (3) of the Proof of Claim sets out the consideration for the loans as follows:

"A. On Loan No. 2167 the consideration was advances of Five Thousand Three Hundred Thirty-Eight Dollars and Fifty-Three Cents ($5,338.53) and Ninety-Three Dollars and Fifty-Nine Cents $93.59) (sic) deposited to the bankrupt's account together with filing fees of Six Dollars ($6.00) finances and Sixty-One Dollars and Eighty-Eight Cents ($61.88) of credit life insurance financed;

B. On Loan No. 213–401 the consideration was the renewal of a previous Note in the amount of Five Thousand Seven Hundred Eighty-One Dollars and Seventy-Eight Cents ($5,781.78) which was due and owing on November 30, 1977, from a loan dated August 10, 1977;

C. On Loan No. 211–344 the consideration was an advance of Five Thou-

sand Dollars ($5,000.00) for the bankrupt and a renewal of a previous Note that was due in the amount of Three Thousand Five Dollars and Sixteen Cents ($3,005.16)."

Paragraph 8 of Creditor's Proof of Claim sets out the security interest held for each debt:

"A. On Loan No. 2167 the security is all inventory, furniture, fixtures, equipment, tools and accounts receivable according to the Security Agreement-General Form dated November 1, 1977, a copy of which is attached hereto and incorporated herein by reference. The proceeds of the collateral are also covered which at the present time are in the hands of Robert Warder, Trustee.

B. On Loan No. 213–401 security is one 1969 Cheverolet (sic) Van Serial No. GE159719669, 1976 Cheverolet (sic) Van Serial No. SD9585–HO, all inventory, furniture, fixtures, equipment, accounts receivable, including but not limited to the items on Schedule "A" attached thereto, which Security Agreement is attached hereto. Proceeds of the collateral are also covered which at this time are in the hands of Robert Warder, Trustee.

C. On Loan No. 211–344 security is a second mortgage dated September 8, 1977 on the following described real estate:

Lot 10 of Midland Heights Subdivision No. 2 located in the Southwest Quarter of the Southwest Quarter of the Northwest Quarter (SW¼ SW¼ NW¼) of Section 25 Township 3 North, Range Six East of the Black Hills Meridian, Meade County, South Dakota, and all inventory including but not limited to two mini-sprints; SN 2022 (Red); SN 2029 (Orange) according to the Security Agreement—General Form. Copies of both instruments are attached hereto."

On March 25, 1980, this Court held a lengthy hearing on the Complaint. During

the hearing Creditor requested the Bankruptcy Court to rely on the filed Proof of Claim in making its decision. Debtors did not object to the Proof of Claim or to the Bankruptcy Court relying upon the Proof of Claim in making its decision.

Evidence presented by the parties at the hearing conflicted on whether two or three loans remained to be paid off by Debtors. Debtors presented evidence that a Chevy Van had been sold for $6,500.00 and that Creditor had received the check for $6,500.00 to pay Loan No. 213–401 in full. Creditor did not dispute this evidence but contended that, in addition to Loan No. 213–401, Debtors owed another $5,781.78 on a loan made either in August or November.

Creditor's Proof of Claim recites that the consideration for Loan No. 213–401 was:

"the renewal of a previous Note in the amount of Five Thousand Seven Hundred Eighty-One Dollars and Seventy-Eight Cents ($5,781.78) which was due and owing on November 30, 1977, from a loan dated August 10, 1977;".

That another loan existed, made by Creditor to Debtors in August or November for the exact same amount as advanced in Loan No. 213–401, this Court finds hard to believe. This Court will hold Creditor to its request that the Bankruptcy Court rely upon its filed Proof of Claim and find that at the time Debtors filed their Chapter 7 Petition they owed Creditor only on the three notes set out in Creditor's Proof of Claim. This Bankruptcy Court further finds that Debtors paid Loan No. 213–401 in full when Creditor received the $6,500.00 from the sale of the Chevy Van.

Debtors also presented evidence that a payment in the approximate amount of $1,500.00 had been made to Creditor. Creditor did not dispute evidence that it had received money and had applied the money to loans other than that of Loan No. 211–334. Debtors did testify that they did not expressly direct Creditor as to how the money was to be applied.

The parties also presented evidence that an auction sale of Debtors' inventory, equipment, furniture, etc. had been held and that the Trustee presently had control of the proceeds from that sale. Trustee stated to the Court that he had $6,700.00 in his control, uncertain as to proper distribution.

## ISSUES

The parties have presented the following two issues to the Court: (1) Whether Debtors are entitled to have the previous payments applied to Loan No. 211–334; and (2) Whether the proceeds from the auction sale should be applied first to Loan No. 211–334 or to Loan No. 2167.

■ In deciding the following issues, this Court wishes to emphasize that it holds Creditor responsible for the confusion that has resulted in this matter. This Court holds that Creditor, as lender, had the primary responsibility for keeping an accurate record of the numerous transactions that occurred between Creditor and Debtors. Creditor did not fulfill that responsibility. As discussed earlier, Creditor was unsure as to how many notes actually were outstanding. During the hearing it became apparent that Creditor was unsure that notes marked renewal actually were renewal notes. Further, the filing dates of the copies of the Financing Statements admitted into evidence by Creditor do not match the dates Creditor made the loans. Thus, this Bankruptcy Court will resolve any contradictions in the evidence against Creditor.

## (1) APPLICATION OF MONEY

■ The first issue presented to this Court is whether Debtors are entitled to have this Bankruptcy Court direct Creditor to apply the previous payment made to Loan No. 211–334, which is secured by a second mortgage.

Creditor would rely on SDCL 20–4–8, which provides that:

"If no application be made pursuant to Section 20–4–7, the creditor, within a reasonable time after such performance, may apply it toward the extinction of any obligation, performance of which was due to him from the debtor at the time of

such performance; except that if similar obligations were due to him, both individually and as a trustee, he must, unless otherwise directed by the debtor, apply the performance to the extinction of all such obligations in equal proportion; and an application once made by the creditor cannot be rescinded without the consent of the debtor",

whereas Debtors would rely on SDCL 20–4–7, which states:

"If, at the time of the performance by a debtor described by Section 20–4–6, the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation, he manifested to the creditor, it must be so applied."

Since SDCL 20–4–8 does not come into play unless SDCL 20–4–7 is not applicable, this Court will just determine whether SDCL 20–4–7 is applicable.

In *Tayloe v. Sandiford*, 20 U.S. 13, 20, 7 Wheat. 13, 5 L.Ed. 384, the Supreme Court of the United States held that:

"A person owing money under distinct contracts, has undoubtedly, a right to apply his payment to whichever debt he may choose; and although prudence might suggest an express direction of the application of his payments, at the time of their being made, yet there may be cases in which this power would be completely exercised, without any express direction given at the time. A direction may be evidenced by circumstances, as well as by words. A payment may be attended by circumstances which demonstrate its application as completely as words could demonstrate it."

In interpreting SDC 47.0207, the forerunner of SDCL 20–4–7 and SDCL 20–4–8, the South Dakota Supreme Court has followed *Tayloe v. Sandiford* in the cases of *Crescent Electric Supply Company v. Employers Mutual Casualty Company*, 79 S.D. 18, 107 N.W.2d 252 (1961); *F. M. Slagle & Co. v. Bushnell*, 70 S.D. 250, 16 N.W.2d 914 (1944); and *Hesnard v. Larive*, 45 S.D. 19, 184 N.W. 972 (1921).

Debtors have already testified that they left no express direction as to how the money was to be applied. Thus, the Court can only decide for the Debtors if it finds from the facts that circumstances dictated how Creditor should have applied the money.

This Bankruptcy Court has not been able to sort out from the evidence: (1) how much money Debtors actually gave Creditor; (2) when Debtors gave Creditor the money; (3) when Creditor applied the money to the loans; and (4) to what loans Creditor applied the money. The only facts this Court is certain of are that Debtors did give Creditor approximately $1,500.00 and that Creditor did not apply the money to Loan No. 211–334.

Loan No. 211–334, made on September 8, 1977, was a loan for $8,015.16 and became due March 7, 1978. Creditor took as security for the loan a security interest in Debtors' inventory and a second mortgage on Debtors' homestead.

Loan No. 2167, the only other note remaining to be paid, was a loan for $5,500.00. Debtors were to repay $324.65 per month over a period of 18 months, commencing December 1, 1977. Debtors made payments of either $324.65 or $649.30 through May 18, 1978.

Loan No. 211–334 was in default some three months before Loan No. 2167. Both loans were secured by collateral. However, both Debtors and Creditor were aware that Loan No. 211–334 was secured by a second mortgage on Debtors' homestead. At the time Debtors made the payment Creditor knew Debtors were in trouble and were concerned about paying off the second mortgage.

This Bankruptcy Court holds that Creditor knew and was aware that it was the Debtors' intention that the money be applied to the oldest loan, Loan No. 211–334, which was secured by the second mortgage. Creditor failed to apply the money to Loan No. 211–334, believing that without express directions it was not required to do so. This Bankruptcy Court holds that the money Debtors paid to Creditor should be applied to Loan No. 211–334.

### (2) PRIORITY

The second issue presented to the Court is whether the proceeds from the auction sale should be applied first to Loan No. 211–334 or to Loan No. 2167.

The Trustee presently has $6,700.00 in his control. $6,600.00 of the $6,700.00 represents proceeds from the auction sale of Debtors' inventory, fixtures, furniture, equipment, etc. Since Loan No. 211–334 is secured only by inventory and the second mortgage, any decision rendered by this Court will affect only that part of the proceeds that can be traced back to the inventory sold. Further, any decision rendered by this Court will decide only whether Loan No. 2167 or Loan No. 211–334 should be paid first. This Court is not deciding the relationship of Loan No. 2167 or Loan No. 211–334 to any other claim against Debtors' estate. It may very well be that all of the proceeds from the auction sale may be used up in satisfying other claims, regardless of whether Loan No. 2167 or Loan No. 211–334 is entitled to be paid off first.

This Court holds that Debtors are entitled to have Loan No. 211–334 paid off first.

Loan No. 211–334, based on a Security Agreement dated September 8, 1977, and made September 8, 1977, is prior in time to Loan No. 2167, which was made on November 1, 1977, and based on a November 1, 1977, Security Agreement. Creditor's evidence showed that Financing Statements covering inventory were filed on March 4, 1977; on March 8, 1977; and on November 3, 1977.

Based on the foregoing, it is impossible to determine the date Creditor perfected his security interest in each loan. However, this Bankruptcy Court is able to determine on each loan the date Creditor's security interest attached. Creditor's security interest in Loan No. 211–334 attached on September 8, 1977, whereas it did not attach until November 1, 1977, on Loan No. 2167. Therefore, the Court holds that Debtors are entitled to have Loan No. 211–334 paid off before Loan No. 2167 from any part of the proceeds that resulted from the sale of Debtors' inventory.

Debtors' counsel shall submit an Order consistent with the foregoing. This Memorandum Decision will constitute Findings of Fact and Conclusions of Law.